508 So.2d 1042 (1987)
Dr. Thomas L. KILGORE, Jr.; Dr. Martin H. McMullan; The Surgical Clinic, P.A.; and The Mississippi Baptist Medical Center
v.
Woodrow Wilson BARNES.
No. 57623.
Supreme Court of Mississippi.
April 8, 1987.
Rehearing Denied July 15, 1987.
*1043 Herber A. Ladner, Jr., Stephen P. Kruger, Douglas E. Barfield, Upshaw & Ladner, Cary E. Bufkin, K. Hayes CallicuttShell, Buford, Bufkin, Callicutt & Perry, Jackson, for appellants.
John H. Price, Jr., Thomas, Price, Alston, Jones & Davis, Jackson, Vernon H. Broom, Columbia, for appellee.
Before WALKER, C.J., and ROBERTSON and GRIFFIN, JJ.
ROBERTSON, Justice, for the Court:
This case presents a nice question regarding application of our 1976 medical malpractice statute of limitations to a claim arising from acts or omissions occurring in 1974. Important to the context is that the claim presented was not barred at the time of enactment of the 1976 limitations statute. Within the meaning of the new statute, the claim did not accrue until discovery in 1982, with suit thereon being brought within two years thereafter. The Circuit Court held the claim viable and denied the physicians' motion for summary judgment.
Because of the importance and nature of the questions presented, we brought the matter here on interlocutory appeal. Kilgore v. Barnes, 490 So.2d 895 (Miss. 1986). We now affirm.

II.
In the present posture of the case  all Defendants having moved for summary judgment  we proceed upon the assumption of the following facts.
Woodrow Wilson Barnes, Plaintiff below and Appellee here, is an adult resident citizen of Columbia, Mississippi. On June 28, 1974, Barnes was a patient in the Mississippi Baptist Hospital (currently known as the Mississippi Baptist Medical Center) (hereinafter "Hospital"). On that occasion, Dr. Thomas L. Kilgore, Jr., assisted by Dr. Martin H. McMullan, performed coronary artery bypass surgery upon Barnes. Barnes was given a general anesthetic, was asleep during the operation and has no direct knowledge of what actually occurred during the operation. During the course of the surgery, a foreign object, apparently a metallic surgical needle, was left in the lining of Barnes' heart, a matter which he did not discover until June 21, 1982, and which, of course, forms the basis for his present claim.
On the day of his surgery in 1974 and in days following, several chest x-rays were taken of Barnes. On July 5, 1974, he was released from the hospital to the care of his personal physician and on August 8, 1974, Barnes returned to Dr. Kilgore for a post-operative check-up. During this period Barnes had no knowledge of the foreign object in his chest nor any reason to know of such.
*1044 During the ensuing years Barnes often complained of weakness and pain similar to the angina pains he had experienced prior to surgery. Several chest x-rays were taken during office visits to Barnes' personal physician, Dr. Charles Thompson, and also while he was hospitalized for treatment of other ailments. He was never advised of or even given a clue to what the problem might be. In addition, Barnes was examined by other physicians, including Dr. H. Davis Dear, Dr. Thomas Whitehead and Dr. Manning Hudson, in the months and years ensuing between his 1974 heart surgery in the summer of 1982. No one detected or advised him of the presence of any foreign object within his chest.
On June 21, 1982, Barnes was admitted to the Methodist Hospital in Hattiesburg, Mississippi, for the purpose of having prostate surgery. Chest x-rays were taken in the hospital prior to surgery. Barnes was informed by one of the attending physicians, Dr. Thomas S. Messer, that the radiologist who had examined these x-rays, Dr. James M. Martin, had discovered the presence of a foreign object in the lining of his heart which was suggestive of and appeared to be a metallic surgical needle. This was the first occasion upon which Barnes knew or had reason to know of such foreign object. It is suggested in the briefs that, due to risk factors, including Barnes' age and heart condition, the object has not been removed.
On June 14, 1984  one year and 359 days after he learned of the existence of the foreign object in his chest  Barnes commenced this civil action by filing his complaint in the Circuit Court of the First Judicial District of Hinds County, Mississippi. Named as Defendants were Dr. Thomas L. Kilgore, Jr., Dr. Martin H. McMullan, The Surgical Clinic, P.A., and The Mississippi Baptist Medical Center.
All Defendants moved for summary judgment, arguing that the claim was barred under the general six year statute of limitations, Miss. Code Ann. § 15-1-49 (1972). They argued that the claim accrued on June 28, 1974  the date of the alleged negligent act  and was not filed within six years thereafter. The Circuit Court, however, held that the July 1, 1976, medical malpractice statute of limitations, Miss. Code Ann. § 15-1-36(1), (3) (Supp. 1986), while shortening the limitations period liberalized the definition of "accrued" and in consequence held that the Barnes' claim had seven days' life left in it when this action was filed. On July 22, 1985, the Circuit Court overruled and denied the motion for summary judgment.

III.
If this action were governed by our general, catch-all six year statute of limitations, Miss. Code Ann. § 15-1-49 (1972), we would hold it barred. Under that statute, we have heretofore held that claims accrue and the clock begins to tick on the date of the wrongful act complained of. Smith v. McComb Infirmary Association, 196 So.2d 91, 92-93 (Miss. 1967); Wilder v. St. Joseph Hospital, 225 Miss. 42, 45-46, 82 So.2d 651, 652 (1955); see also Ford Motor Company v. Broadway, 374 So.2d 207, 208 (Miss. 1979); M.T. Reed Construction Co. v. Jackson Plating Co., 222 So.2d 838, 840 (Miss. 1969). Barnes' claim would have become barred on June 28, 1980. The present civil action was not commenced until almost four years later.
In 1976, the Mississippi Legislature enacted a new statute of limitations for medical malpractice tort claims. That statute provided for a two year limitations period. Significantly, however, the concept of accrual was redefined so that the clock does not begin to tick until "the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered." See Smith v. Sanders, 485 So.2d 1051, 1052-53 (Miss. 1986); Pittman v. Hodges, 462 So.2d 330, 333-35 (Miss. 1984); and Tribou v. Gunn, 410 So.2d 378, 379 (Miss. 1982). The statute applies "only to actions the cause of which accrued on or after July 1, 1976." If Section 15-1-36 controls, the action is timely filed  by one week.
A few general parameters need be considered. We may not give retroactive effect to newly enacted statutes of limitations *1045 shortening the period within which a claim arising prior to enactment must be brought. See Perkins v. State, 487 So.2d 791, 792 (Miss. 1986); Garrett v. Beaumont, 24 Miss. 377, 379 (1851); see also Reynolds v. Logan Charter Service, 565 F. Supp. 84, 86 (N.D.Miss. 1983). On the other hand, most other jurisdictions recognize the authority of legislatures to enlarge periods of limitation with respect to existing claims, that is, claims not barred at the time of elongation. See, e.g., Dan River, Inc. v. Adkins, 3 Va. App. 320, 349 S.E.2d 667, 669 (1986); Klimmek v. Independent School District No. 487, 299 N.W.2d 501, 502-03 (Minn. 1980); Del Monte Corp. v. Moore, 580 P.2d 224, 225 (Utah 1978); Sullivan v. Spicer, 114 R.I. 435, 335 A.2d 632, 633 (1975). See generally Annotation, Validity and Applicability To Causes of Action Not Already Barred, Of a Statute Enlarging Limitation, 79 A.L.R.2d 1080 (1961 and Supp. 1986) This is consistent with our general principle that an act remedial in its character embraces claims existing when the act was passed. Excelsior Mfg. Co. v. Keyser, 62 Miss. 155, 158 (1884).
Accepting that our legislature in 1976 had the power to enlarge the statute of limitations for medical malpractice claim not then time barred, the question becomes whether it has done so here. Two methodologies were available: postponing the beginning date, i.e., the manner of identifying the date on which the statutory period begins to run, or extending the ending date, i.e., the date on which the claim becomes time barred. The point turns upon the language of the 1976 enactment. Section 15-1-36(3) provides that it applies to claims which "accrued on or after July 1, 1976." The definition of accrual is found in subsection (1): "the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered." The claim in today's case accrued June 21, 1982. The Defendants do not seriously contend that Barnes with reasonable diligence might have discovered the fact that a metallic surgical needle had been left within his chest prior to that date. Accordingly, the claim is viable. Compare Pittman v. Hodges, 462 So.2d 330, 333-35 (Miss. 1984); and Tribou v. Gunn, 410 So.2d 378, 379 (Miss. 1982).
The fact that a different definition of accrual may have been accepted with respect to the catch-all six year statute of limitations is beside the point. That definition has been superseded  amended, if you will  by the enactment of Section 15-1-36, an act which was within the legislature's competence to enact. More precisely, Section 15-1-36, upon its enactment in 1976, extended the time period within which Barnes' then quite viable (if undiscovered) claim had to be filed by postponing until date of discovery the date upon which the limitations clock would begin to tick.
The United States Court of Appeals for the Fifth Circuit has made an Erie[1] guess that we would apply in the sort of situation before us today the general six year statute of limitations including the time-of-injury accrual rule. Vidrine v. Enger, 752 F.2d 107, 109 (5th Cir.1984). That opinion ignores the fact that our legislature had the authority to amend the definition of accrual with respect to non-barred claims and thus extend the date the statute of limitations began to run  and, indeed, in this instance, to reset the clock  and that in fact our legislature has exercised that authority.[2]
What we say here is wholly consistent with other principles having force in our law. Section 15-1-36 is a specific statute of limitations having to do with malpractice tort claims against physicians, hospitals *1046 and other health care providers. On the other hand, Section 15-1-49 is a general statute. It is a common sense principle of statutory construction that, where conflict is found between a statute stated in general terms and one applying specifically and particularly to the case before the Court, the latter will be preferred. Triangle Refineries, Inc. v. Mabus, 467 So.2d 650, 652 (Miss. 1985); Bailey v. Emmich Bros., 204 Miss. 666, 688, 37 So.2d 797, 800 (1948); Price v. Price, 202 Miss. 268, 273, 32 So.2d 124, 126 (1947). Moreover, Section 15-1-49 by its express language has application only to "actions for which no other period of limitation is prescribed." Today's claim is not such an "action," for a period of limitations has been prescribed for it, a period of limitations found in Section 15-1-36.
No doubt prior to 1976 medical malpractice actions were governed by Section 15-1-49. The 1976 statute represents a compromise reflecting a balancing of the reasonable and legitimate interests of the affected persons: health care providers, on the one hand, and persons perceiving themselves the victims of malpractice, on the other. The 1976 statute no doubt reflects the legislative judgment that the interest of health care providers required that the limitations period be shortened from six years to two years. On the other hand, that same 1976 enactment must also be read as reflecting a legislative judgment that continued application of the time of negligent act accrual rule could operate quite harshly, for how could one be held to bring an action within two years without knowledge of the nature of his claim or the identity of the parties who should be sued, a dilemma given reality by several of our prior cases, e.g., Pittman v. Hodges, 462 So.2d 330, 333-35 (Miss. 1984); and Tribou v. Gunn, 410 So.2d 378, 379 (Miss. 1982) and by the facts of the case at bar.
The order of the Circuit Court denying the motion of Defendants/Appellants for summary judgment shall be, and the same hereby is, affirmed. This case is remanded and restored to the active docket of the Circuit Court of First Judicial District of Hinds County, Mississippi, for such further proceedings as may be appropriate.
AFFIRMED AND REMANDED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
NOTES
[1] See Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).
[2] We regard the Court of Appeals with great respect as a participant in our federal partnership, and, where we regard its reasoning as sound on points of Mississippi law, we will so state. See Smith v. Temco, Inc., 252 So.2d 212, 215 (Miss. 1971), citing Dawkins v. White Products Corp., 443 F.2d 589 (5th Cir.1971). On the other hand, it is this Court which has primary and ultimate authority as expositor of the law of this state and where the Court of Appeals has misread our law, we will not hesitate to say so. See, e.g., Fairchild v. State, 459 So.2d 793, 800-01 (Miss. 1984).