530 So.2d 1319 (1988)
AMERICAN ELECTRIC, A DIVISION OF FL INDUSTRIES
v.
Santiago SINGARAYAR, and Individual, and Evelyn Singarayar.
No. M-2587.
Supreme Court of Mississippi.
June 3, 1988.
Paul R. Scott, Leigh A. Rutherford, Wilroy, Scott & Rutherford, W. Michael Richards, Jon P. McCalla, Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Memphis, Tenn., for appellant.
Susan M. Guerieri, E.F. Hale, III, Gilder Law Firm, Southaven, for appellee.
Before ROY NOBLE LEE, C.J., and ROBERTSON and ANDERSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This matter is before the Court upon Petitioner's application for permission to *1320 appeal, interlocutorily, alleged inadequacies in a preliminary injunction entered in the trial court. Petitioner, a manufacturer of lighting fixtures, demands extraordinary relief to prevent Respondent, an electrical engineer and former employee, from disclosing Petitioner's trade secrets and other proprietary information to and for the benefit of his new employer. The trial court enjoined disclosure of the trade secrets but denied Petitioner's request that Respondent be enjoined from employment with his new employer, and then certified
that a substantial basis exists for a difference of opinion on a question of law as to which appellate resolution may protect the party from substantial and irreparable injury.
See Rule 5, Miss.Sup.Ct. Rules, eff. January 1, 1988.
We deny permission for Petitioner to present the interlocutory appeal.

II.

A.
The Defendant, Santiago Singarayar was born in a town in southern India. He came to America in the mid-1970's, received his master's degree in engineering from the University of Mississippi in 1976, and is currently a permanent resident of the United States. His wife, Evelyn Pang Singarayar, is a Panamanian born Chinese who immigrated to the Mississippi Delta and was educated at the University of Mississippi.
Until early 1988 Singarayar was employed as a senior electrical engineer with the American Electric Division of FL Industries at its facility in Southaven, Mississippi. Singarayar began with American Electric on or about January 17, 1984. On that date he signed an "Agreement for Assignment of Inventions and Covenant Against Disclosure" (hereinafter "employment agreement"). The employment agreement contained no non-competition clause. Singarayar did, however, agree that he would not disclose "information identified as secret or confidential or which, from the circumstances, in good faith and good conscience ought to be treated as confidential." The covenant of nondisclosure did not apply to "information already in the public domain or information which has been dedicated to or released to the public by the Employer."
Beginning January 17, 1984, Singarayar became involved in American Electric's design, production and quality control of circuitry relating to the starting and control of lamps. This is a specialized aspect of the light fixture industry in which American Electric is a leader. Singarayar developed and learned extensive details of this area of production.
In mid-January, 1988, Singarayar gave American Electric notice of his intention to resign his employment. His last day of work was February 12, 1988. Singarayar immediately moved to North Carolina and began working for Regent Lighting Corporation, a company producing products in competition with American Electric.

B.
On February 19, 1988, American Electric commenced this civil action when it filed its complaint in the Circuit Court of DeSoto County, Mississippi. The complaint alleged breach of contract, conversion and misappropriation, specific performance, appropriation of trade secrets, breach of fiduciary duties and sought a writ of replevin to recover personal property of American Electric alleged to be in Singarayar's possession. The complaint also sought damages, discovery and injunctive relief.[1]
Various preliminary skirmishes resulted first in the Circuit Court's entry of a sweeping temporary restraining order, among other things, precluding Singarayar from working for Regent Lighting. See Rule 65(b), Miss.R.Civ.P. Incident to this *1321 T.R.O. American Electric posted a $200,000 bond and as well deposited $30,000 with the Court out of which Singarayar has been paid the salary he would otherwise have drawn from Regent Lighting. Thereafter, on March 25, 1988, the Circuit Court entered an order in essence restraining Singarayar, preliminary to disposition of the action on its merits, from disclosure or other use of American Electric's trade secrets and other proprietary information and ordering that Singarayar return to American Electric all property of American Electric of which he had custody.
The critical issue  then and now  was whether the temporary restraining order would be converted into a preliminary injunction insofar as Singarayar had been enjoined from employment with Regent. After an extensive hearing, the Circuit Court extended that T.R.O. for an additional ten days but refused to convert it into a preliminary injunction, in effect leaving Singarayar free thereafter to begin working with Regent. En route to this portion of its ruling, the Circuit Court stated
I want to make it absolutely clear at this point that unless there's a drastic change in circumstances between now and ten days from now, roughly March 26, that the Court will dissolve this TRO as to enjoining Singarayar from employment. In fact, according to Rule 65, the TRO would be dissolved according to its very terms. I am saying this so that the attorneys will know and the parties will know that they need to do whatever is necessary either here or in North Carolina[2] to resolve this issue to make sure that, certainly, American Electric is protected, but at the same time to make sure that Singarayar is not, likewise, irreparably damaged by not being able to work for Regent Lighting.
In its Order, however, the Circuit Court certified the case for interlocutory appeal as required by Rule 5(a), Miss.Sup.Ct. Rules. All proceedings below have been stayed pending our action.
Armed with its Rule 5(a) certificate, American Electric presents this petition for permission to appeal interlocutorily, arguing that the only way to prevent American Electric's protected information from being revealed to Regent and thereby causing harm to American Electric was to enjoin Singarayar preliminarily from employment with Regent. Accordingly, on the merits American Electric urges that the trial court erred in denying the preliminary injunction.

III.
We begin with our rule regarding interlocutory appeals. Rule 5(a), Miss.Sup.Ct. Rules,[3] provides that interlocutory appeals may be allowed when:
a substantial basis exists for a difference of opinion on a question of law as to which appellate resolution may:
(1) Materially advance the termination of the litigation and avoid exceptional expense to the parties; or
(2) Protect a party from substantial and irreparable injury; or
(3) Resolve an issue of general importance in the administration of justice.
American Electric's argument emphasizes Rule 5(a)(2), arguing that this appeal is necessary to protect it from substantial and irreparable injury. Indeed, in its certificate the Circuit Court has found that
"a substantial basis exists for a difference of opinion on a question of law as to which appellate resolution may protect a *1322 party from substantial and irreparable injury."
Before reaching the merits, a point need be made clear. Nothing in our new Rules places in the hands of the trial court the keys to this Court's front door. That the court below has given the Rule 5(a) certificate in no way precludes our de novo review of whether the rule's criteria have been met and whether the application for interlocutory appeal should be granted. This Court retains absolute authority to decide whether an interlocutory appeal should be granted, notwithstanding the rule's provision that the lower courts may assist us in the exercise of that authority. This is not to denigrate the role of the trial court in the interlocutory appeals process. That Court's proximity and sensitivity will often provide invaluable insights whether we ought exercise our authority and grant an interlocutory appeal.
In the case at bar, we are concerned that in granting a certificate the Circuit Court may have misapprehended a threshold requirement of the rule, that is, that there be a substantial basis for a difference of opinion "on a question of law". Much metaphysical exposition may be found regarding the nature and definition of the phrase "a question of law". Practically speaking, the phrase's meaning may be shown by contrast, not definition. Some consider that the decisions of trial courts fall naturally into three broad categories: questions of law, questions of fact, and matters of discretion. Rosenberg, Appellate Review Of Trial Court Discretion, 79 F.R.D. 173 (1979). Indeed, the language of Rule 5(a) naturally suggests an opposition between a question of law and a question of fact or matter for the discretion of the trial court. Common sense suggests matters of the latter category  acts of discretion  least eligible for interlocutory review.
No doubt in reference to the rule, the Circuit Court's order identifies the question of law as "whether a preliminary injunction should have been issued pursuant to the temporary restraining order issued March 10, 1988," prohibiting Singarayar's employment with Regent. That, of course, is a question of law application, as distinguished from a pure question of law, see, e.g., Boardman v. United Services Automobile Association,[4] 470 So.2d 1024, 1029-30 (Miss. 1985), although this is not per se fatal to petitioner's application. The comment to Rule 5 considers that "question of law" within the rule "includes the application of law to fact." That we have before us a question of law application does, however, diminish the force of the appeal's claim for space upon our crowded docket, particularly where the facts remain hotly disputed.
A word of caution. In seeking the meaning of "question of law", many may wish to examine the federal practice, as the courts of that sovereign have had considerable experience in managing interlocutory appeals. Our rule is somewhat more relaxed than the "controlling question of law" concept in federal practice. See 28 U.S.C. § 1292(b). The Comment to our Rule 5 reads "A question of law need not control the entire case but must be sufficiently important to the litigation to merit an interlocutory appeal."
The approach to interlocutory appeals now controlled by Rule 5 represents a departure from our prior practice. Yet this does not mean we must jettison from all thought experience. Our past offers valuable clues regarding when an appeal presents the sort of question of law that ought be decided interlocutorily. Recalling the Boardman trichotomy just noted, we find one such clue in Stirling v. Whitney National Bank, 170 Miss. 674, 150 So. 654 (1933).
There is perhaps no branch of the law [the law of fraudulent conveyances] wherein the controlling principles are better settled; and while it is true that the fact that the applicable principles are well settled does not of itself prevent an interlocutory appeal and that it is the law of the particular case that is to be settled, nevertheless such an appeal should *1323 not be allowed where the principles of law to be applied are already well and clearly settled unless, in the given situation, the difficulty of application makes the case the substantial equivalent of one wherein the principles have not been well and clearly settled. Griffith, Chan.Prac., p. 799. And such is not at all the case here. To give the [rule] on interlocutory appeals any other construction than that just stated, we would have to assume that the [court], in enacting it, was of the opinion that the [trial judges] know so little of the well-settled principles of the law that they would be unable to apply those principles in the progress of the usual cases, arising in their courts, unless instructed by the supreme court, and we know that the [court] had no such opinion or purpose.
Stirling, 170 Miss. at 682-83, 150 So. at 654-55. While Stirling addressed the law surrounding fraudulent conveyances, the language quoted above is equally instructive far beyond that context.
Statute of limitations questions are among those which may meet the rule's requisites. Before Rule 5(a), we considered whether a medical malpractice action was limited by a six-year statute triggered by the occurrence or a two-year statute that did not begin to run until discovery. See Kilgore v. Barnes, 490 So.2d 895 (Miss. 1986) and 508 So.2d 1042 (Miss. 1987). Kilgore presented a "question of law" with respect to which there then existed "a substantial basis ... for a difference of opinion."[5] Similarly, American Tobacco Co. v. Evans, 508 So.2d 1057 (Miss. 1987), also a pre-Rule 5(a) case, presented questions of law of first impression regarding discovery of trade secrets and the form and content of a protective order. In each of these cases matters of fact had to be considered. Was what Barnes alleged Dr. Kilgore did a medical malpractice tort within Miss. Code Ann. § 15-1-36 (Supp. 1987) necessarily requires taking a good look at the facts. Answering the question requires applying law to facts. The same obtains regarding the factual nature of American Tobacco's trade secrets and the risks to be minimized through a protective order. See also Johnson v. Ladner, 514 So.2d 327, 328-29 (Miss. 1987) (interlocutory appeal granted to consider whether blood tests should be administered in paternity action).
That the question presented is one of law application does not per se preclude certification, for in some sense every question of law will likely involve some application of law to fact, as Kilgore and American Tobacco readily reflect. Still an interlocutory appeal ought ordinarily be granted only where at its core the question concerns a dispute regarding the content of the applicable law, a dispute with respect to which there is a substantial basis for a difference of opinion or where as in Stirling the difficulty of application makes the case the substantial equivalent of one wherein the legal principles are not well settled.
The gist of the foregoing discussion is that courts of necessity decline interlocutory jurisdiction over "application" questions where the fact denominator of the equation is unsettled. In other words, where we must settle disputes of fact before we may apply the law to them, an interlocutory appeal should rarely be granted.

IV.
We apply the rule as explicated to the present petition. In a sense the Circuit Court performed its duty to the fullest. First, the Court ruled forthrightly on the question presented, whether the preliminary injunction should issue. Rule 5 is not a means for passing the buck to this Court. Rather, the trial court should stick its neck out and rule unequivocally. See State of Mississippi, State Tax Commission, and Larkin Smith, Sheriff of Harrison Co., MS v. Europa Cruise Line, Ltd., et al., 528 So.2d 839, 840 (Miss. 1988). Having done this, the trial court may give the Rule 5(a) certificate which ought include a statement of the question of law being certified *1324 and the prong(s) of the rule deemed applicable. Again, the Circuit Court has met the rule.
As we dissect the Rule 5(a) certificate, however, the grounds for interlocutory appeal begin to evaporate. There is certainly no substantial basis for a difference of opinion on the legal standards for the grant or denial of a preliminary injunction. Though hardly matters for mechanical determination, such questions by law have been committed to the sound discretion of the trial court, a point accepted in our jurisprudence for more than a century. See Ashcot, Inc. v. Texas Eastern Transmission Corp., 241 Miss. 392, 399, 129 So.2d 405, 408 (1961); Bowen v. Hoskins, 45 Miss. 183, 188 (1871); Brown v. Speight, 30 Miss. 45, 49 (1855). That discretion should be exercised by reference to a sensitive consideration of and weighing and balancing of four factors:[6]
(a) Whether the plaintiff will be irreparably harmed if the injunction does not issue;
(b) Whether the defendant will be harmed if the injunction does issue;
(c) Whether the public interest, i.e., the rights of third parties, will be served by the injunction; and
(d) Whether the plaintiff is likely to prevail on the merits.
See, e.g., Doran v. Salem Inn, Inc., 422 U.S. 922, 931, 95 S.Ct. 2561, 2567, 45 L.Ed.2d 648, 659 (1975); Canal Authority of Florida v. Callaway, 489 F.2d 567 (5th Cir.1974).
This familiar balancing test has been perceptibly explicated  and applied  in American Hospital Supply Corporation v. Hospital Products, Ltd., 780 F.2d 589, 593-94 (7th Cir.1986). The trial court's charge is that it "choose the course of action that will minimize the cost of being mistaken." 780 F.2d at 593. After discussing the four factors listed above, American Hospital says
The Court undertakes these inquiries to help it figure out whether granting the injunction would be the error-minimizing course of action, which depends on the probability that the plaintiff is in the right and on the costs to the plaintiff, the defendant, or others of granting or denying the injunction.
780 F.2d at 594.
If it is not the content of the standards for granting a preliminary injunction, what then is the "question of law" on which there is said to exist a "substantial basis ... for a difference of opinion"? The trial court's certificate answers "whether a preliminary injunction should have issued... ." But that, too, is surely but a question of whether the court correctly applied settled law to the unsettled facts of the case in an area where law grants the trial court substantial discretion.
Sensing his dilemma, counsel for American Electric on oral argument offered this justification.
[W]here immediate and irreparable harm will happen and the employee has a specialized knowledge, it is meaningless to order him not to divulge and you can't police them and you should enter the injunction keeping him from working for the period of time I have stated to pay his salary... .
Much of that statement goes to the merits  whether the preliminary injunction should issue  and not to the procedural question before us, whether under Rule 5(a) the interlocutory appeal should be granted. The novel  and disputable  factor, we are told, is American Electric's agreement to pay Singarayar the salary he would have earned with Regent and to secure that pledge with a cash deposit into the registry of the court, out of which Singarayar is being paid as we speak.
This said-to-be-novel factor is but a fact. As such, it is obviously a fact of consequence *1325 regarding the likelihood/gravity of harm to Singarayar. See American Hospital, 780 F.2d at 593. But that hardly turns this case into one involving a question of law upon which there exists a substantial basis for a difference of opinion.
In sum, upon mature consideration of the criteria set forth in Rule 5(a), and in the exercise of the discretion embedded therein, we deny American Electric's Petition for Permission to Appeal.
PETITION FOR INTERLOCUTORY APPEAL DENIED.
ROY NOBLE LEE, C.J., HAWKINS, and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
NOTES
[1] This matter lies within the subject matter jurisdiction of the Circuit Court via American Electric's claim of damages for breach of contract coupled with its application for a writ of replevin. American Electric's claims for equitable relief lie within the pendent jurisdiction of the Circuit Court, as they arise out of the same transaction(s) or occurrence(s) as American Electric's claims at law. See Hall v. Corbin, 478 So.2d 253, 255 (Miss. 1985).
[2] Apparently there is pending in North Carolina a related action against Regent Lighting. Counsel have advised us that all proceedings there have been stayed pending the outcome here.
[3] Effective January 1, 1988, the Mississippi Supreme Court Rules became this state's only legally authorized avenue of appeal interlocutorily, wholly superseding former statutory, Miss. Code Ann. § 11-51-7 (1972), and common law procedures therefor. See Kilgore v. Barnes, 490 So.2d 895 (Miss. 1986); see also Craig v. Barber, 524 So.2d 974, 976 (Miss. 1988). Of course, interlocutory appeals properly so called are now governed by Rule 5. Proceedings for extraordinary writs subject to Rule 21 exhibit some of the features of interlocutory appeals and exist in harmony with Rule 5. Indeed, Rule 21(b) authorizes the Court in its discretion to convert an application for extraordinary writ into an interlocutory appeal subject wholly to Rule 5.
[4] Boardman recognizes the familiar three stages of an adjudication: (1) fact identification, (2) law declaration and (3) law application. 470 So.2d at 1029-30.
[5] An identical case and question today, however, should not be certified. The question has been answered in Kilgore. Though a question of law would still be present, there no longer exists a substantial basis for a difference of opinion.
[6] The provisional remedy known in our prior practice as a preliminary injunction experienced a mutation on January 1, 1982, into two, first a temporary restraining order and next a preliminary injunction. See Rule 65, Miss.R.Civ.P. As Rule 65 had been derived in concept and wording from prior federal practice, we flesh out our rule by reference to federal standards. Bourn v. Tomlinson Interest, Inc., 456 So.2d 747, 749 (Miss. 1984); Foster v. State, 508 So.2d 1111, 1117 n. 3 (Miss. 1987).