538 So.2d 1191 (1989)
Gerald DONALD
v.
REEVES TRANSPORT CO. OF CALHOUN, GEORGIA and Harry Randall Strickland.
No. 58121.
Supreme Court of Mississippi.
February 1, 1989.
Rehearing Denied March 8, 1989.
*1192 George E. Gillespie, Jr., Gillespie & Rogers, Hattiesburg, for appellant.
Richard F. Yarborough, Jr., Kenneth Crites, William N. Graham, Aultman, Tyner, McNeese & Ruffin, Columbia, for appellees.
Before DAN M. LEE, P.J., and PRATHER and PITTMAN, JJ.
DAN M. LEE, Presiding Justice, for the Court:

STATEMENT OF THE CASE
This appeal is from an interlocutory order of the Circuit Court of Lamar County, Mississippi, denying the appellant's motion for summary judgment. In a negligence action brought by the appellees, Reeves Transport Company and Harry Randall Strickland, against Gerald Donald and the estate of Ronald J. Loewenstein, Jr., the appellant Donald filed a motion for summary judgment in his favor. The trial judge denied the motion, but removed the case from the docket until an interlocutory appeal from the denial of the motion could be heard by this Court. From the judge's denial of his motion, Donald filed this appeal on March 30, 1987. We affirm.

FACTS
When this cause of action arose, Gerald Donald was the owner and operator of a business under contract with the Mississippi State Highway Department to clear vegetation along Interstate Highway 59 in Forrest County. The crew performing this work was composed of Gerald Donald, Gene Donald, Walter Leggett, and Ronald Loewenstein. Gerald Donald's crew utilized, among other equipment, a one-ton truck and a Mor-Bell shearer, a vehicle used to harvest timber. The shearer was a three-wheeled vehicle designed for maneuverability. It was an off-the-road vehicle, equipped neither with lights nor an ignition lock, and was not safe for highway use. The equipment ordinarily was kept overnight at the area where the crew's work was in progress.
Ronald Loewenstein's duties for Gerald Donald's business involved only cleanup. Loewenstein never operated any of the machinery in the course of his duties. The usual hours of Gerald Donald's work crew were from approximately 7:00 a.m. until between 3:00 p.m. and 5 p.m., depending on when the crew finished chipping the last load of wood for the day. Donald's crew never worked at night.
On October 21, 1983, Gerald Donald's crew was working at the Interstate Highway 59 and U.S. Highway 98 interchange near Hattiesburg. Gerald Donald was not present at the work site that day. Walter Leggett finished work and left the work site at approximately 3:30 p.m. to carry a load of wood chips to Masonite Corporation in Laurel, Mississippi. Gene Donald departed the work site at approximately 4:00 p.m. Gene Donald had given Loewenstein permission to drive Gerald Donald's one-ton truck home, because Loewenstein's vehicle was disabled and Loewenstein needed transportation to and from work. Ronald Loewenstein left the work site in Gerald Donald's truck at approximately 4:00 p.m. No member of Gerald Donald's crew, including Loewenstein, had any additional work to be performed until 7:00 a.m. the following morning.
*1193 Loewenstein, who was married, was seeing a woman named Martha Singley on a social basis. Loewenstein arrived at Singley's mobile home at approximately 4:00-5:00 p.m. that day. Also at Singley's mobile home that day was a man named Jackie Walters, who, according to Singley, was just a friend. According to Singley, Walters called Loewenstein to the back room of the mobile home and the two of them talked an hour or longer. Later, Singley said something to Walters which made him angry, and he hit the window of Singley's trailer door, breaking the window and cutting Walters' hand. Singley asked Loewenstein if he would go to the store to get some bandages, and Loewenstein said that he would. Singley estimated that it was around 9:00 or 10:00 p.m. when Loewenstein left to get the bandages. Loewenstein had consumed three cans of beer while at Singley's home. Singley never saw Loewenstein again.
That same evening, Harry Randall Strickland was driving an 18-wheel truck owned by Reeves Transport Co. of Calhoun, Georgia. Strickland was headed south on Interstate Highway 59. Sometime after 9:00 p.m., when Strickland reached a point approximately one-half to one mile south of U.S. Highway 98, his truck collided with the Mor-Bell shearer owned by Gerald Donald. Strickland was injured, and the 18-wheel truck received considerable damage. Loewenstein's body was found at the crash site. Approximately one-quarter mile to one-half mile south of the crash site, Donald's one-ton truck was found stuck in mud in the median of Interstate Highway 59. Apparently, Loewenstein had gotten Donald's truck stuck while on a personal mission to purchase the bandages requested by Ms. Singley. It further appeared that Loewenstein had gone to the work area where Donald's equipment was stored, had started the Mor-Bell shearer and was steering the shearer along the highway or shoulder when the accident occurred. Presumably, Loewenstein intended to try to extricate the truck from the mud. The appellees concede that this is apparently what happened.
On October 2, 1986, Reeves Transport Company and Harry Randall Strickland filed a complaint in the Circuit Court of Lamar County, Mississippi, against Gerald Donald and the estate of Ronald J. Loewenstein, Jr. (The complaint was originally filed on October 12, 1984, but pursuant to a stipulation by the parties, the complaint was dismissed without prejudice and refiled.) The complaint alleged that Loewenstein was negligent in the operation of the Mor-Bell shearer, that at the time of the accident Loewenstein was acting within the scope of his employment, and that Loewenstein's negligence was thus attributable to Gerald Donald.
The plaintiffs admitted that Loewenstein was not acting within the scope of his employment when he got the one-ton truck stuck, but contended that at the time of the accident, Loewenstein was engaged in an attempt to preserve his employer's property and, therefore, under the "emergency employment" doctrine, was brought within the scope of his employment.
Gerald Donald filed a motion for summary judgment, claiming that there was no question of fact and that, as a matter of law, Loewenstein was not acting within the course and scope of his employment when the accident occurred. Donald contended, therefore, that he was not vicariously liable for the alleged negligence of Ronald Loewenstein.
On February 10, 1987, the trial judge denied Donald's motion for summary judgment, finding that "a purely personal mission initially can change and be converted to a joint personal and business purposes mission when the character of the mission changes from purely personal to preserving the property of the employer." (R. 184) Furthermore, the trial judge found that, even though Loewenstein was going to get bandages for Ms. Singley, it was possible that he also intended to go by the job site for some purpose. That possibility, according to the judge, created a jury question on the issue of whether or not Loewenstein was acting within the scope of his employment.
*1194 This interlocutory appeal is from the trial judge's denial of Donald's motion for summary judgment. It should be noted that no request for, nor grant of, permission to file an interlocutory appeal was made prior to this appeal.

DISCUSSION
Donald bases his interlocutory appeal on this Court's decision in Kilgore v. Barnes, 490 So.2d 895 (Miss. 1986), in which the Court held that in exceptional circumstances an interlocutory appeal from circuit court is warranted.[1] The appellees do not contest this interlocutory appeal. In fact, they stipulate that the denial of Donald's motion for summary judgment is appealable under our ruling in Kilgore. Both the appellant and the appellees misread Kilgore. As we explained in Kilgore, "[interlocutory] appeals will be allowed only under the most extraordinary circumstances." Id. at 896. Nor can jurisdiction be conferred on this Court by stipulation of the parties. Slater v. Bishop, 251 Miss. 306, 308-09, 169 So.2d 465, 467 (1964) ("Though the right of the appellant to appeal is not contested by appellees, it is nevertheless the duty of this Court to raise the question which involves jurisdiction, on its own motion, of whether this appeal from the interlocutory decree will lie.").
On January 1, 1988, Mississippi Supreme Court Rule 5, governing interlocutory appeals, went into effect. Rule 5(a) provides in part:
An appeal from an interlocutory order may be sought if the order grants or denies certification by the trial court that a substantial basis exists for a difference of opinion on a question of law as to which appellate resolution may:
(1) Materially advance the termination of a litigation and avoid exceptional expense to the parties; or
(2) Protect a party from substantial and irreparable injury; or
(3) Resolve an issue of general importance in the administration of justice.
Rule 5 requires that an appeal from an interlocutory order must be sought by filing with the Clerk of this Court a petition for permission to appeal. As Justice Robertson wrote for the Court in American Electric v. Singarayar, 530 So.2d 1319 (Miss. 1988):
Nothing in our new Rules places in the hands of the trial court the keys to this Court's front door.... This Court retains absolute authority to decide whether an interlocutory appeal should be granted. .. .
Id. at 1322.
Since Donald's appeal was filed before Miss.Sup.Ct. Rule 5 went into effect, he was not bound by the procedural requirements of Rule 5, and the trial court's lack of a grant or denial of certification as required in Rule 5(a) will not bar his appeal. However, this Court's decisions, including the Kilgore opinion, on whose authority Donald bases his appeal, make it clear that appeals from interlocutory orders are not appeals of right. The decision of whether or not to grant an interlocutory appeal ultimately rests with this court. Singarayar, 530 So.2d at 1322; Johnson v. Ladner, 514 So.2d 327, 328 (Miss. 1987); Kilgore v. Barnes, 490 So.2d 895, 896 (Miss. 1986).
It is clear that this case does not present the kind of "extraordinary circumstances" normally required for us to grant an interlocutory appeal. Furthermore, applying the test set out in Miss.Sup.Ct. Rule 5(a), we find that this case does not pass muster. First, under 5(a)(1), it is not enough that our potential resolution of a controlling question of law might avoid exceptional expense to the parties  it must also tend to materially advance the termination of the litigation. Since the decedent Loewenstein was also named as a defendant *1195 in this action, it is unlikely that resolution of the pivotal question of law in this appeal would materially advance the termination of this litigation.
Second, appellate resolution of the controlling question of law would not serve to protect Donald from substantial and irreparable injury, as Donald runs no risk of irreparable injury by our denial of interlocutory appeal. Subsection 5(a)(2) applies primarily to interlocutory review of rulings on injunctions, receivership matters, etc.
Third, it cannot be fairly said that the resolution of the question of law presented by the instant case would resolve an issue of general importance in the administration of justice. Subsection 5(a)(3) allows the resolution of conflicts among trial courts and of questions which need to be promptly resolved for the future guidance of trial courts. Miss.Sup.Ct. Rule 5 Comments.
While one of the main purposes of interlocutory appeals is to promote judicial economy, this appeal has had the opposite effect. The record on this appeal was filed here on March 30, 1987, almost two years ago. Because it appeared on its face to be an ordinary appeal, it was handled as an ordinary appeal. While it was sitting here, awaiting review, the entire litigation was suspended in limbo. Had this interlocutory appeal not been filed, quite possibly the litigation would have been terminated by now at the trial level. As it is, the case must be remanded to the trial court to be re-scheduled on its docket. Then, should the final judgment be appealed to this Court, there will be another long wait. It is because the filing of interlocutory appeals in other than "the most extraordinary circumstances" actually hampers judicial economy that we discourage such appeals. Nevertheless, we look at the merits of this appeal.

SUMMARY JUDGMENT
Miss.R.Civ.P. 56(c) provides in part:
[Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
See Fruchter v. Lynch Oil Co., 522 So.2d 195, 198 (Miss. 1988); Galloway v. Travelers Insurance Co., 515 So.2d 678, 682 (Miss. 1987). In Brown v. Credit Center, Inc., 444 So.2d 358, 363 (Miss. 1983), we stated: "Summary judgments, in whole or in part, should be granted with great caution." We also stated:
A motion for summary judgment lies only where there is no genuine issue of material fact; summary judgment is not a substitute for the trial of disputed fact issues... . When doubt exists whether there is a fact issue, the non-moving party gets its benefit. Indeed, the party against whom the summary judgment has been sought should be given the benefit of every reasonable doubt.
Id. at 362 (Emphasis added.)
In the case at bar, the appellant insists that there is no genuine issue of material fact. However, the appellees contend that the question of whether Loewenstein was acting within the scope of his employment when the accident involving the Mor-Bell shearer occurred, is a factual issue. The trial judge obviously agreed with the appellees. Applying the language from Brown  "When doubt exists whether there is a fact issue, the non-moving party gets its benefit"  it is obvious that the trial judge was correct in denying appellant's motion for summary judgment. As we further stated in Brown:
We recognize that reasonable minds may often differ on the question of whether there is a genuine issue of material fact. In this context we find appropriate the admonition in a leading commentary on Federal Rule 56: "If there is to be error at the trial level it should be in denying summary judgment and in favor of a full live trial."
Id. at 362-63 (quoting 6 Moore's Federal Practice § 56.15[1.-2] p. 56-435 (1982).
There are several other reasons why we think the trial judge was correct in denying Donald's motion for summary judgment. *1196 The record is far from complete. Answers have not yet been filed to the plaintiffs' re-filed complaint. Much of the information in the record would not be admissible at trial. The affidavits would not be admissible, and parts of the depositions of witnesses would be inadmissible as hearsay. Furthermore, that part which would be admissible might be totally rejected by a jury. In summary, we find that the trial judge was justified in finding that there are simply too many unanswered questions at this stage to render a final decision on the merits, as a summary judgment necessarily does.
Even where the test prescribed in Miss.R.Civ.P. 56(c) for granting a summary judgment appears to have been met in its entirety, a judge is not ordinarily required to grant summary judgment. Wright, Miller & Kane, Federal Practice and Procedure § 2728 (2d ed. 1983) states:
[I]n most situations in which the moving party seems to have discharged his burden of demonstrating that no genuine issue of fact exists, the court has discretion to deny a Rule 56 motion. This is appropriate since even though the summary judgment standard appears to have been met, the court should have the freedom to allow the case to continue when it has any doubt as to the wisdom of terminating the action prior to a full trial.
We hold that the trial judge did not err in denying the appellant Donald's motion for summary judgment. This case is remanded to be restored to the active docket of the Circuit Court of Lamar County, Mississippi, for further proceedings not inconsistent with this opinion.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and ZUCCARO, JJ., concur.
NOTES
[1] Prior to Kilgore, interlocutory appeals technically were allowed only from chancery court. See Miss. Code Ann. § 11-51-7 (1972 and Supp. 1988). In Southern Farm Bureau Casualty Insurance Company v. Holland, 469 So.2d 55 (Miss. 1984), this Court granted an interlocutory appeal from circuit court without addressing whether or not the appeal could properly be heard. However, it was not until Kilgore that this Court officially authorized interlocutory appeals from circuit court.