Ophelia B. LINDLEY and John J. Lindley, Plaintiffs–Appellants,

v.

George C. HAMILTON, Jr., M.D., et al., Defendants,

and

SK & F Co., Inc., Defendant–Appellee.

Ophelia B. LINDLEY and John J. Lindley, Plaintiffs–Appellants,

v.

George C. HAMILTON, Jr., M.D., Defendant–Appellee.

Nos. 87–4957, 88–4372.

United States Court of Appeals, Fifth Circuit.

Sept. 15, 1989.

---

James W. Nobles, Jr., Jackson, Miss., Stratton Bull, Jr., John T. Green, Natchez, Miss., for plaintiffs-appellants.

Thomas E. Williams, Christy D. Jones, Jackson, Miss., for defendant-appellee in No. 87–4957.

Mildred M. Morris, Jimmie B. Reynolds, Jr., Jackson, Miss., for defendant-appellee in No. 88–4372.

Before GEE, REAVLEY, and JOLLY, Circuit Judges.

GEE, Circuit Judge:

### Facts

Ophelia Lindley suffers from tardive dyskinesia, a movement disorder. From 1969 to 1983 Lindley was treated by Dr. George C. Hamilton, a psychiatrist, for depression. During the first four years of Lindley's treatment, Dr. Hamilton prescribed stelazine to combat her depression. Stelazine is an anti-psychotic or neuroleptic medication derived from phenothiazine. When prescribed for long periods of time, stelazine can cause tardive dyskinesia.

Lindley asserts that symptoms of tardive dyskinesia, such as eye tics, began to manifest themselves while she was taking stelazine. According to Lindley, Dr. Hamilton dismissed her eye tics as a reaction to her husband's eye tic and did not tell her that she had developed tardive dyskinesia as a result of the medication. In 1973, however, Dr. Hamilton diagnosed tardive dyskinesia and changed Lindley's medication to serax. The symptoms subsided while Lindley was taking serax. Lindley maintains that, until 1983, no one told her either that she had tardive dyskinesia or that the stelazine caused her condition. In 1983, after seeing several other physicians, Lindley was informed that she had tardive dyskinesia and that the stelazine had caused it.

### Proceedings In District Court

In 1985, Lindley filed her original complaint against Dr. Hamilton, alleging various acts of negligence. One year later she amended the complaint to assert a product liability action against SK & F Co., Inc., the manufacturer of stelazine. SK & F filed a motion for summary judgment on several grounds, among them that the six year statute of limitations had run. The district court granted SK & F's motion on the ground that the action was time barred and declined to address SK & F's other proffered grounds for dismissal. The court dismissed SK & F from the action, and Lindley appealed. We stayed the appeal pending trial of the action against Dr. Hamilton.

In 1988, Lindley's action against Dr. Hamilton was tried to a jury. The court submitted special interrogatories on the issues of the running of the statute of limitations and of Dr. Hamilton's alleged negligence. The jury answered both in favor of Lindley, awarding her $400,000 in damages. The court granted Dr. Hamilton's motion for judgment notwithstanding the verdict on the grounds that the jury had erred on both the statute of limitations and the negligence issues.

### Analysis

#### A. *Grant of Summary Judgment.*

The appellants maintain that the district court improperly granted summary judgment in favor of SK & F on the ground that the statute of limitations had run on Lindley's claim. We disagree.

In this diversity action, Lindley asserts a products liability claim against SK & F based on Mississippi law. Under

Mississippi law, "[a]ll actions for which no other period of limitation is prescribed shall be commenced within six years next after the cause of such action accrued, and not after." Miss.Code Ann. Section 15–1–49 (1972). This general six year limitations period governs product liability actions. *Ford Motor Co. v. Broadway,* 374 So.2d 207, 209 (Miss.1979). Unlike other limitations periods in Mississippi, the six year period begins to run on the date of the injury. *Kilgore v. Barnes,* 508 So.2d 1042, 1044 (Miss.1987); *Ford,* 374 So.2d at 209; *see also, Vidrine v. Enger,* 752 F.2d 107, 109 (5th Cir.1984) (noting that the Mississippi Supreme Court has visited the issue several times, each time concluding that the six year period begins to run on the date of the injury). In today's case, the latest possible date of the injury was sometime in 1973, when Hamilton last prescribed stelazine or when the symptoms of tardive dyskinesia first appeared. As a result, the statute of limitations ran on Lindley's action against SK & F in 1979, seven years before she filed her claim against SK & F.

■ Although Mississippi does recognize tolling of the six year period in certain circumstances, the tolling provision does not provide relief for Lindley. Under Mississippi law, limitations are tolled if the plaintiff establishes that the defendant fraudulently concealed the cause of action. Miss.Code Ann. Section 15–1–67 (1972). Lindley has not alleged, either on appeal or before the trial court, that SK & F or Hamilton fraudulently concealed her cause of action. Thus, Lindley cannot take advantage of the tolling provision.

■ Lindley contends that tardive dyskinesia is a latent disease; that latent disease cases are governed by federal law; and that federal law applies the discovery rule to all latent disease cases, even those based on state law. Under the discovery rule, a cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury. In support of her novel theory that the discovery rule applies whenever the plaintiff alleges a latent disease, Lindley relies on two cases, one from our circuit and one from the Supreme Court. In both, the plaintiffs were exposed to toxic substances on the job and, in both, the plaintiffs claimed that injuries resulting from the exposure were latent for many years. *Urie v. Thompson,* 337 U.S. 163, 168–73, 69 S.Ct. 1018, 1023–26, 93 L.Ed. 1282, 1292–94 (1949); *Albertson v. T.J. Stevenson & Co., Inc.,* 749 F.2d 223 (5th Cir.1984). In each case, the court held that the statute of limitations did not begin to run until the plaintiff could or should have discovered the injury. Lindley fails to point out, however, that each court was construing a *federal* statute of limitations; in *Urie,* the plaintiff brought his action under the FELA, in *Albertson,* under the Jones Act. Neither the *Urie* nor the *Albertson* court purported to graft the discovery rule onto all statutes of limitations, state and federal alike.

Lindley also relies on two Mississippi Supreme Court opinions in which the Court applied the discovery rule. *Tribou v. Gunn,* 410 So.2d 378 (Miss.1982); *Pittman v. Hodges,* 462 So.2d 330 (Miss.1984). Lindley, however, overlooks a crucial distinction: the *Tribou* and *Pittman* courts were construing the Mississippi *two*-year statute of limitations for medical malpractice actions, a statute that expressly incorporates the discovery rule. These opinions have no bearing on the six year statute of limitations at issue in this case.

Finally, Lindley contends that our decision in *Jackson v. Johns–Manville Sales Corp.* determines the issue. In *Jackson* we made an *Erie* determination that the Mississippi courts would apply the discovery rule to the six year period if the case involved a latent disease. 727 F.2d 506, 518–19 (5th Cir.1984). After that decision, however, the Mississippi Supreme Court held otherwise, confounding our prediction: the six year period begins to run on the date of the injury, it determined, inviting the state legislature to change the rule if it did not agree with the Court's interpretation, and specifically, if gently, pointing out its disagreement with our application of the discovery rule to the six-

year limitations statute in a latent injury situation. *Kilgore v. Barnes*, 508 So.2d 1042, 1044–45 (Miss.1987). The Mississippi Legislature has not accepted the Mississippi Supreme Court's invitation. Thus our *Erie* guess was a mistaken one, and we are as the Mississippi Supreme Court correctly observes, bound by that Court's interpretation of Mississippi law. *Kilgore*, 508 So.2d at 1045 n. 2.

### B. *Judgment Notwithstanding The Verdict.*

 The district court granted Dr. Hamilton's motion for judgment notwithstanding the verdict on the ground that Lindley did not establish that Dr. Hamilton's treatment breached the applicable standard of care. Lindley's burden at trial was to address expert testimony which (1) identified the standard of care, and (2) established that Dr. Hamilton failed in some causally significant way to conform to that standard. *Boyd v. Lynch*, 493 So.2d 1315, 1318 (Miss.1986). In her pretrial order, Lindley identified two issues of fact for trial: first, whether Dr. Hamilton prescribed the proper medication at the proper dose and, second, whether the standard of care from 1971–73 required Dr. Hamilton to place Lindley on mandatory drug-free weekends or holidays. Lindley presented three experts at trial, none of whom opined either that stelazine itself or the dose of stelazine administered to her was improper. Only one of the experts, Dr. Cox, criticized Hamilton's failure to specify drug-free weekends or holidays. The district court sent this issue to the jury, which found that Hamilton's practice breached the standard of care. On Hamilton's motion for judgment notwithstanding the verdict, the court found a "complete dearth of evidence upon which reasonable minds could differ" as to whether the standard of care required drug-free holidays or weekends. Dr. Cox admitted both on direct and on cross-examination that Hamilton's decision to require drug-free periods did not deviate from the standard of care at the time he was prescribing stelazine. Instead, Cox merely stated that *he* would have required drug-free holidays for Mrs. Lindley. This evidence fails to show that Dr. Hamilton breached the standard of care and is an insufficient basis for reinstating the baseless jury verdict.

On appeal, Lindley asserts that Dr. Hamilton breached the standard of care because he failed to familiarize himself with the literature that warned of a link between stelazine and tardive dyskinesia. On Hamilton's motion, however, the district court noted that Lindley did not put on any evidence to establish that Dr. Hamilton's alleged ignorance was causally related to her condition. Lindley also emphasizes Dr. Hamilton's purported ignorance and insists that the jury could infer from this ignorance that he was negligent. Lindley does not, however, offer any causal link between his purported lack of knowledge and her condition. Moreover, Dr. Hamilton maintains that the record indicates that he did keep abreast of the available literature. The ruling of the district court is therefore

AFFIRMED.