**In re Dr. Richard A. KNUTSON.**

**Bankruptcy No. 92–22741.**

United States Bankruptcy Court,
N.D. Mississippi.

Feb. 15, 1999.

Craig M. Geno, Harris, Geno & Dunbar, Jackson, MS, for debtor.

Willard L. McIlwain, Greenville, MS, for Charles and Alice West.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court is an objection filed by the debtor, Dr. Richard A. Knutson, to the claim of Charles and Alice West; response thereto having been filed by the Wests; and the court, having heard and considered same, hereby finds as follows, to-wit:

### I.

In early November, 1989, Charles West was seriously injured in a "horse roping" accident where he fractured both of his legs. He was admitted to the Delta Regional Medical Center and treated by Dr. Knutson, a licensed orthopedic surgeon. Dr. Knutson placed Mr. West's left leg in a cast and performed surgery on the right leg attempting to stabilize the fracture through the use of two metal plates. This surgery occurred on November 6, 1989. Sometime thereafter, Mr. West, who was described as being extremely disoriented and claustrophobic, fell from his hospital bed and refractured his right leg. So that there would be no infection resulting from the first surgery, Dr. Knutson waited until December 14, 1989, to perform a second surgery on Mr. West's right leg to repair the damage caused ostensibly by the hospital fall. During this surgery, Dr. Knutson used a longer plate to stabilize the refracture.

On June 28, 1990, as evidenced by a contract of employment, Mr. West employed the services of Attorney Willard McIlwain to represent him in a lawsuit against those persons or entities that might be responsible for the injuries that he sustained when he refractured his right leg, specifically Delta Regional Medical Center and Dr. Knutson. McIlwain subsequently filed a lawsuit against Delta Regional Medical Center alleging that the hospital and/or its employees were negligent in not preventing Mr. West from falling from his hospital bed. At that time Dr. Knutson was still the treating physician for Mr. West and was not named as a defendant in the lawsuit.

McIlwain contends that he thought initially that Dr. Knutson had acted properly in treating Mr. West in the first surgery. On March 20, 1991, during the course of the litigation against the hospital, McIlwain received responses to interrogatories that he had propounded to the hospital. These responses indicated that the hospital would contend that Dr. Knutson had inappropriately set Mr. West's right leg in the first surgery. The hospital asserted that the right leg had not been stabilized as a result of Dr. Knutson's initial surgical procedures, and, therefore, this condition caused or substantially contributed to the refracture which occurred after the fall. At this point, McIlwain was clearly placed on notice that a potential claim existed in favor of his client against Dr. Knutson.

Shortly after receiving the interrogatories, McIlwain wrote a letter to Dr. Knutson on March 28, 1991, indicating that the hospital was attempting to "pass the buck" and blame Mr. West's refracture on Knutson's method of treatment. McIlwain testified that thereafter he visited with Dr. Knutson and was assured that the medical procedures that he had employed were proper.

The lawsuit went to trial in September, 1992. Dr. Knutson was called by McIlwain as an expert witness to testify on behalf of Mr. West. McIlwain testified in the hearing before this court that Dr. Knutson, while on the witness stand in the circuit court trial, changed his testimony and conceded that his initial treatment of Mr. West had been improper. McIlwain indicated that this was the first time that he had actual notice of any inappropriate treatment by Dr. Knutson coming directly from Dr. Knutson.

The transcript of Dr. Knutson's trial testimony indicates that he did indeed change his opinion on cross-examination by Attorney Carl Hagwood, who was representing the hospital. Excerpts from the transcript are set forth as follows:

Direct examination of Dr. Knutson by Mr. McIlwain.

Q. (Witness goes back to the witness box.) Dr. Knutson, as the consequence of this surgery, do you believe that this particular fracture was made stable to a reasonable degree of medical certainty?

A. Yes, sir, when I finished the procedure, I was confident that it was quite stable at that time.

Q. This was the surgery performed on November 6, 1989?

A. That is correct.

Trial transcript at page 6. (Court's Exhibit No. 1)

Cross-examination of Dr. Knutson by Mr. Hagwood.

A. (Witness left the witness stand and stood before the jury.) This is the bottom portion of the plate. We have no evidence of any screw holes as I had thought they were when we talked on Saturday. The distal portion or top portion of the shaft has three screws: one there, one there, and one there. (shows on drawing.) Those are only able to be there based upon a previous screw head.

Q. In other words, you are doing it and I want to circle these to be certain. Based on those evidence of that, that you changed your position?

A. Correct.

Trial transcript at page 73. (Court's Exhibit No. 1)

Q. In fact, doctor, if you put a 7 hole plate on here where you originally told me on Saturday, of course, if doesn't go up above the break does it because the distance, doctor, from above the notch to above the spiral fracture, I measured it and got 205 cm and that little plate is 119. Would you like to measure it?

A. I have already. I assume your numbers are correct. My measurements were 175 or 180.

Q. There is no way that a 7 hole plate, 119 millimeters long is going to cover a spiral fracture that distance is it, whether it be 175, 180 or 205, is it?

A. That is correct.

Trial transcript at page 74. (Court's Exhibit No. 1)

At the bankruptcy court hearing, Dr. Knutson testified that he had met with McIlwain on only one "meaningful" occasion prior to the trial to discuss his testimony. That occurred on the Friday morning before the trial commenced the following Monday morning. He indicated that at some time during the trial that he met with McIlwain and co-counsel, Attorney Victor McTeer, to further discuss his testimony.

At the bankruptcy court hearing, Attorney Murray Akers, who was qualified as an expert witness insofar as medical malpractice investigations are concerned, testified that he had had a meeting with McIlwain shortly after McIlwain received the hospital's interrogatory responses. Akers was also aware of the aforementioned letter that McIlwain had written to Dr. Knutson on March 28, 1991, since he also represented Dr. Knutson. Akers indicated that he asked McIlwain why he had not named Dr. Knutson as a defendant in the lawsuit. He was informed by McIlwain that his clients, Mr. and Mrs. West, specifically instructed him not to sue Dr. Knutson. Akers also testified that in his customary manner of investigating a medical malpractice claim, that the first person that he would target is the treating physician. In this case, that would be Dr. Knutson.

## II.

■ The critical issue in this proceeding is whether the two year statute of limitations, § 15–1–36(1), Miss.Code Ann., applicable to medical malpractice actions, now

bars the claim of Mr. and Mr. West against Dr. Knutson. This statute provides as follows:

(1) For any claim accruing on or before June 30, 1998, and except as otherwise provided in this section, no claim in tort may be brought against a licensed physician, osteopath, dentist, hospital, nurse, pharmacist, podiatrist, optometrist or chiropractor for injuries or wrongful death arising out of the course of medical, surgical or other professional services unless it is filed within two (2) years from the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered.

■ The parties concede that the filing of Dr. Knutson's bankruptcy case on September 4, 1992, has tolled the running of the statute of limitations since that time. Therefore, since Dr. Knutson performed the first surgery on November 6, 1989, what is the operative date that the two year statute of limitation commenced to run? Because the potential claim of the Wests results from an alleged improper surgical procedure, it is a latent claim that would not arise until it was discovered or should have been discovered in the exercise of reasonable diligence. This is further complicated by the fact that an intervening surgery occurred on December 14, 1989, to repair the bone that was refractured. As such, the date that the statute of limitations began to run in this proceeding is the date when a reasonable person, exercising ordinary care and diligence, would have discovered that the first surgery performed by Dr. Knutson was improper.

At this point, the court must look to the underlying events that occurred when Mr. West refractured his leg. From what this court has heard, it is undisputed that Mr. West fell from his hospital bed either because he was not being personally attended to by a nurse or because his bed railings had not been raised. (Parenthetically, Dr. Knutson testified that he gave strict orders that Mr. West's bed railings should be maintained in a raised position because of his disoriented and claustrophobic condition.) From these circumstances, in the opinion of the court, it is logical to *initially* assume that the fall from the hospital bed was the sole proximate cause of the refracture. It would certainly not be automatically presumed that the refracture was caused by an improper surgical procedure which was employed to stabilize the original fracture. It is also logical beyond peradventure to presume that Dr. Knutson, as the treating physician, advised his patient and McIlwain that the procedures that he had performed were proper in every respect. Otherwise, why would McIlwain call Dr. Knutson as an expert witness for Mr. West. It is equally ludicrous to think that McIlwain would deliberately "torpedo" his own lawsuit by calling Dr. Knutson to testify unless he thought that Dr. Knutson would defend and stand by the surgical procedures that he had employed.

The court's conclusion in the preceding paragraph is substantiated by the testimony of Dr. Knutson in a hearing before this court on January 20, 1993. An excerpt from the transcript of said hearing is set forth as follows:

Q. You are not aware, Dr. Knutson, are you, of any information that the Plaintiff had prior to that date (March 28, 1991, the date of McIlwain's letter to Dr. Knutson) that would have put him on notice that you were guilty of any act ·of malpractice or negligence?

A. I am not aware; no, sir.

Q. Okay. And you are aware that Mississippi has a two-year statute of limitations on medical malpractice cases?

A. Yes, sir.

Bankruptcy Court transcript at pages 17 and 18. (Debtor's Exhibit No. 5)

The court is, therefore, compelled to conclude that McIlwain had no actual knowledge that Dr. Knutson would concede that he had employed an improper surgical procedure until he did so under Hagwood's cross-examination. This con-

clusion, however, does not mean that the two year statute of limitations should commence to run on the date of Dr. Knutson's "eye opening" testimony.

The court does not believe that Dr. Knutson "fraudulently concealed," as a part of some Machiavellian scheme, his potential liability to Mr. West. Rather, the evidence indicates that he was unaware of his culpability until confronted with the cross-examination questions posed by Hagwood. Regardless, the court feels that it would be egregiously unfair to allow Dr. Knutson to avoid defending the claim of Mr. West under circumstances where he, as the treating physician in a position of trust, did not admit or disclose his improper conduct for almost three years after it had occurred.

### III.

Under the totality of the circumstances of this case, the court is of the opinion that McIlwain, exercising the care and diligence required of a reasonable person, should have recognized that a potential claim existed in favor of his client against Dr. Knutson on the day that he received the responses to the interrogatories that he had propounded to the hospital. The court is of the opinion that the two year statute of limitations should commence to run on that date, March 20, 1991. Because this date is less than two years prior to the time that Dr. Knutson filed his bankruptcy case, tolling the running of the two year statute of limitations, the statute of limitations has not expired and the cause of action remains viable. This decision comports with the holdings of *Smith v. Sanders*, 485 So.2d 1051 (Miss.1986), *Kilgore v. Barnes*, 508 So.2d 1042 (Miss. 1987), and *Fortenberry v. Memorial Hospital at Gulfport*, 676 So.2d 252 (Miss. 1996).

An order will be entered consistent with this opinion.