FERRELL *v.* STATE.

In Banc. Mar. 13, 1950.

No. 37316 (45 So. (2d) 127)

Cephus Anderson and **L. D. Arrington**, for appellant.

**George H. Ethridge**, Assistant Attorney General, for appellee.

**McGehee, C. J.**

The defendant Willie Ferrell was convicted for having committed a felonious assault on the person of Ellis B. Cooper by cutting him with a knife on February 14, 1949, and he was sentenced to serve the maximum term

of ten years in the State Penitentiary, as provided for by law.

Numerous errors are alleged to have been committed by the trial court, and they are assigned as grounds for reversal. For a better understanding of the contentions made here by the appellant, we think it well to first dispose of the question as to whether or not the proof is ample to sustain the verdict of conviction, on the assumption that the accused had a fair and impartial trial.

The defendant in the instant case had sued his wife for a divorce. He was being represented in his divorce suit by Mr. Paul G. Swartzfager, the district attorney, and his wife was being represented by Mr. Ellis B. Cooper, as her attorney to defend the suit. The husband was advised by his attorney that it would be necessary that he pay an attorney's fee of $50 to his wife's lawyer before he would be entitled to try his divorce case. This requirement seems to have angered the husband, and he stated to his lawyer that: "As sorry as my wife is, anybody that would represent her is sorrier than a dog." His lawyer, having invited Mr. Cooper into the jury room where this occurred, and for the purpose of a conference, thereupon stated: "Willie, you can't speak about Mr. Cooper like that", and at the same time, according to the proof on behalf of the State, his lawyer caught him by the lapel of his coat while he was seated in a chair. The husband again said, "Anybody that would represent her is sorrier than a dog." While repeating the statement, he was rising up out of the chair and drawing a knife. His lawyer had attempted to push or hold him down in the chair, but failed. He then, according to the testimony of both Mr. Swartzfager and Mr. Cooper, made a slash at his own attorney with a knife, and at which time Mr. Cooper struck him a jolting blow with his fist, stunning or dazing him, to prevent him from cutting his attorney and for fear that he would then turn on Cooper.

The defendant objected to his attorney, Mr. Swartzfager, testifying as a witness against him in regard to

what occurred, since the witness was present and heard and saw what transpired, by reason of the fact that he represented the defendant in the divorce suit out of which the controversy arose. ██ The answer to this contention is that his attorney when testifying in the instant case was not divulging any private or confidential communication between himself and his client, but was merely testifying as a witness for the State to a crime committed in the presence of the witness, and also in the presence of a third party.

The testimony of Mr. Swartzfager and of Mr. Cooper also disclosed that Mr. Cooper was seated at a table, and that his attention was not attracted until he heard Mr. Swartzfager state to his client, "Willie, you can't speak about Mr. Cooper like that"; that thereupon Mr. Cooper arose from his chair and asked in substance "What did you say about me?", and at the same time saw the flash of the knife as the defendant Willie Ferrell undertook to cut his lawyer; and that thereupon the said accused pursued Mr. Cooper around the corner of a table in the jury room, where there were about a dozen large chairs, and until Mr. Cooper fell backwards over one of them in the corner of the room, and during which time he was stabbed in the neck with the knife and was almost fatally wounded before the weapon was wrenched from the hand of the defendant by his said victim.

There were no other persons who witnessed the occurrence, and the testimony of the defendant Willie Ferrell was to the effect that when he went into the jury room he was told by his lawyer to close the door, and that when he was told that he would have to pay his wife's lawyer fee he attempted to say that: "As sorry as my wife has treated me, she ought to be willing for me to have a divorce", but that he was not permitted to finish this statement before Mr. Swartzfager caught him in the collar in a menacing manner and held him while Mr. Cooper struck him a blow with his fist in such a manner as to daze him; that he did not try to cut Mr.

Cooper and did not know that he had cut him, but was scared and drew his knife only for the purpose of causing his alleged assailants to let him out of the room.

Thus there was presented a clear-cut issue of fact under conflicting testimony, and the jury was amply warranted in convicting the defendant. Where the jury believed the testimony on behalf of the prosecution and found the defendant guilty, the trial judge was justified in imposing the maximum sentence as there were no mitigating circumstances, since the jury had found by its verdict that the State's testimony was true.

There was no application made by the defendant for a change of venue, but it is urged that the trial court erred in not granting a continuance of the case to afford further time in which the attorneys for the defendant could prepare to properly defend the case. However, as hereinbefore stated, the cutting occurred on February 14, 1949. The indictment was returned on February 25th, the defendant was arraigned on February 28th, and the cause set for trial on March 2, 1949. Thereupon the court interrogated the defendant and two of his relatives as to their ability to procure the services of an attorney to defend him, and upon the theory that the court would otherwise be required to appoint an attorney for that purpose. This was after the defendant had been arraigned and pled not guilty to the indictment. The trial judge was thereupon assured that the defendant or his relatives could procure the services of an attorney by the following Monday, the interrogation of them by the court having taken place on Wednesday. The trial judge then passed the case not merely to the following Monday but until the following Thursday thereafter, March 10, 1949. Attorneys were employed on March 9th; they appeared on March 10th, made a motion to quash the indictment on the sole ground that a Mr. Yelverton who who had served on the Grand Jury had pled guilty or been convicted of the unlawful possession of intoxicating liquor in the state courts and was also then under bond

to await the action of the Federal Grand Jury for the possession of intoxicating liquors on which the federal tax had not been paid. ██ ██ This motion to quash the indictment was correctly overruled, for the reason that it is 'only the sale of intoxicating liquors within the past five years that disqualifies a person from jury service under the laws of this state, Section 1762, Code of 1942.

Out of deference to the attorneys for the defendant and in order to give them more time to file any further pleas that they saw fit to file, the trial judge then passed the case until Friday morning of March 11, 1949, when the trial was held.

██ ██ We do not think there was any abuse of the trial court's discretion in not further continuing the case, or in its refusal to transfer the case to the county court pursuant to a motion made to that effect on March 11, 1949, when all of the witnesses who were shown to be material in any respect were present at court, including certain character witnesses for the accused from a distant county.

██ ██ Nor do we think it a ground for reversal of the case that the accused was arraigned under the indictment before he had employed counsel. We recognize that there are some recent decisions of the U. S. Supreme Court to the effect that a plea of guilty in the state courts to a felony is invalid if entered at a time when the accused is not represented by counsel. Here, however, the defendant pled not guilty and was represented throughout his trial, held more than a week thereafter, by two attorneys who ably represented him. He was not prejudiced by the fact that he did not have an attorney present when he pled not guilty the week before. When arraigned, he did not ask the court to delay the arraignment until he could employ counsel, nor did he claim that he would be unable to employ counsel and ask the court to appoint one for him.

██ ██ On a motion for a new trial, for the first time the defendant raised the question as to whether or not

his constitutional rights had been violated by being indicted by an illegal Grand Jury, and on the hearing of this motion no proof was offered to show that the Grand Jury was not a legal one. The Circuit Clerk was merely asked whether or not the jurors were white men, and he answered in the affirmative. It was neither shown nor intimated that there were no names of Negroes in the jury box out of which the Grand Jury and the Petit Jury were drawn, but it does affirmatively appear from the record that the jury boxes were practically exhausted after these juries had been drawn, and it is a matter of common knowledge that the number of Negroes who register and qualify for jury service are almost nominal in comparison with the number of white persons who do so.

We have carefully examined the instructions requested by the defendant which were refused, and we find that no error was committed in refusing them. They were erroneous, and the defendant was granted 21 instructions which fully presented the law on his plea of self-defense on behalf of the defendant, and there was no error in either of the two instructions granted for the State.

We are of the opinion that none of the assignments of error by the defendant are well-taken, and that the defendant had a fair and impartial trial. The judgment and sentence appealed from must therefore be affirmed.

Affirmed.