597 So.2d 615 (1992)
Grace Sylvia HAYNES
v.
Rita ANDERSON.
No. 90-M-1071.
Supreme Court of Mississippi.
March 25, 1992.
*616 Michael F. Myers, Steen Reynolds Dalehite & Currie, Jackson, for petitioner.
Harold Leon Miller, Jackson, for respondent.
Before DAN M. LEE, P.J., and PRATHER and SULLIVAN, JJ.

ON PETITION FOR INTERLOCUTORY APPEAL
SULLIVAN, Justice, for the Court:
Haynes seeks interlocutory review of a discovery order issued by the Circuit Court of the First Judicial District of Hinds County which required Haynes' insurer, State Farm, to produce an investigative file which it had prepared following an automobile accident between Haynes and Anderson, and also required State Farm's adjuster to submit to deposition. Haynes claims the matters sought are privileged work product and, therefore, protected from disclosure by Miss.R.Civ.P. 26(b)(3). The trial judge denied Haynes' Motion to Quash Subpoena and For a Protective Order, and likewise refused to certify this matter pursuant to Miss.Sup.Ct.R. 5.

I.
Haynes and Anderson were involved in an automobile accident on April 27, 1990. At the time, Haynes was insured by State Farm Mutual Automobile Insurance Company. Very soon thereafter, Haynes reported the accident, and State Farm began an investigation because of its duty under the insurance contract to defend Haynes in the event of litigation.
Five days after the accident, on May 2, 1990, State Farm was contacted in writing *617 by attorney Harold Leon Miller and advised that Mr. Miller was representing Rita Anderson in her claim against Haynes. An adjuster also spoke personally with Miller on this date.
State Farm continued its investigation, and on May 25, 1990, Anderson filed a complaint against Haynes. On July 13, 1990, Anderson, through her attorney, served a notice of deposition subpoena duces tecum on Alan Stewart, a State Farm adjuster. This notice commanded Stewart to appear for deposition on a date certain, and to produce the investigative file prepared on behalf of Haynes.
Haynes sought to quash the subpoena and protect the investigative file of State Farm from disclosure on the ground that the information gathered by State Farm was collected in its capacity as representative of Haynes, and in anticipation of litigation, and was, therefore, protected from disclosure by Miss.R.Civ.P. 26(b)(3). The trial court ordered Alan Stewart to submit to the deposition, and further ordered him to produce that part of the investigative file which was accumulated prior to the initiation of litigation.

II.
Miss.R.Civ.P. 26(b)(3) provides in pertinent part as follows:
Subject to the provisions of subsection (b)(4) of this rule [regarding discovery of facts and opinions held by experts], a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means.
Haynes argues that the material in question is work product prepared in anticipation of litigation, and that Anderson's failure to show substantial need prohibits disclosure. State Farm points to the contact with Miller on May 2 as notice that litigation would likely ensue. The letter written by Miller on May 2nd is quite clear in declaring that Miller had "been retained to represent Rita Anderson in her claim for injuries and damages sustained in that automobile accident" with Haynes. As for the period prior to May 2, State Farm suggests that it recognized the possibility of litigation once Haynes reported the accident such that all investigation thereafter was in anticipation of litigation.
The only other viable argument by Haynes is that the trial court erroneously failed to protect against the disclosure of the adjuster's mental impressions or opinions regarding this case, citing Rule 26(b)(3).

III.
Regarding the propriety of interlocutory appeal, we have what is arguably a question of law, or law application, within the meaning of Miss.Sup.Ct.R. 5. But, as a general rule, this Court has declared that it "is not about to become involved in the wholesale granting of interlocutory appeals of civil discovery disputes. Pre-trial discovery is governed by flexible rules well within the administrative capacity of our trial courts." In re Knapp, 536 So.2d 1330, 1333 (Miss. 1988); Mississippi State Bar v. Attorney L, 511 So.2d 119, 121 (Miss. 1987) ("Rarely will we entertain an interlocutory appeal regarding a discovery matter.")
A limited exception has been carved out for "substantial questions of privilege ... where correction of any error on appeal from a final judgment would be futile." Knapp, 536 So.2d at 1333. "If the matter thought privileged is ordered disclosed and is in fact disclosed, our later reversal would be founded on the Humpty Dumpty syndrome." Id. In Knapp this limited exception was applied to address a claim of the privilege against self-incrimination, and an argument that disclosure of the content of grand jury proceedings was prohibited.
*618 One can easily see how Humpty Dumpty, once broken, could not be put back together again in Knapp. The same may be said in this case.
The trial court obviously viewed anything prepared prior to complaint being filed as discoverable, either because it was not prepared in anticipation of litigation, or because there was no showing by Anderson of substantial need. At the other extreme, State Farm claims that everything gathered is privileged work product because litigation was anticipated from the time Haynes reported the accident. At a minimum, State Farm says that contact from Anderson's attorney, Harold Miller, started the "anticipation of litigation" clock.
Anderson waxes more generally about State Farm's failure to raise specific objections to disclosure of specific items. She suggests that State Farm may still object to the disclosure of specific items, and the trial court can view these matters individually and decide their discoverability on an item by item basis. Anderson says it is unfair for State Farm to simply declare that all materials in the file are privileged work product.

IV.
First, we address the question whether the material in the investigative file of State Farm is privileged work product within the meaning of Rule 26(b)(3). Two things seem quite clear. First, that the file was assembled by an insurance adjuster as opposed to Haynes' attorney is irrelevant. Insurance representatives are included within the Rule. Second, one may anticipate litigation prior to complaint actually being filed. This issue boils down to whether all or part of the file assembled by State Farm on behalf of Haynes was "prepared in anticipation of litigation." And it should not be lost on courts or litigants alike that the burden rests on the party resisting discovery to show that the material sought was prepared in anticipation of litigation. Henderson v. Zurn Industries, Inc., 131 F.R.D. 560, 570 (S.D.Ind. 1990).
No cases from this Court speak directly to this point, although cases addressing this question under the federal counterpart indicate that this is one of the most frequently litigated issues, and one on which there is no consensus. As a general rule, the material sought to be discovered, to come within the work product privilege, must have been prepared "with an eye to litigation" and not "in the ordinary course" of business. Sterling Drug, Inc. v. Harris, 488 F. Supp. 1019, 1026 (S.D.N.Y. 1980); United States v. El Paso Co., 682 F.2d 530, 542 (5th Cir.1982), reh. denied 688 F.2d 840 (5th Cir.1982), cert. denied 466 U.S. 944, 104 S.Ct. 1927, 80 L.Ed.2d 473 (1984) (It is a "slippery task" to determine this).
Other courts have stated the general test:
The fact that litigation may still be a contingency at the time the document is prepared has not been held to render the privilege inapplicable, if the prospect of litigation is identifiable because of specific claims that have already arisen... . The test to be applied is whether, in light of the nature of the documents and the factual situation in this particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.
Hercules, Inc. v. Exxon Corp., 434 F. Supp. 136, 151 (D.Del. 1977).
"Litigation need not be imminent ... as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." United States v. El Paso Co., 682 F.2d at 542; see also Henderson v. Zurn Industries, Inc., 131 F.R.D. at 569-70; Binks Manufacturing Co. v. National Presto Industries, Inc., 709 F.2d 1109, 1118-19 (7th Cir.1983); Janicker v. George Washington University, 94 F.R.D. 648, 650 (D.D.C. 1982).
In applying this general test in the context of insurance company files, courts have used one of three approaches. At one extreme, courts "that have dealt with the issue of whether investigative materials prepared by insurance claims adjusters is work-product prepared in anticipation of litigation have held that since insurance companies have a routine duty to investigate *619 accidents, such materials are not prepared in anticipation of litigation but are prepared in the ordinary course of business absent unique circumstances showing the contrary." Schmidt v. California State Auto, Ass'n., 127 F.R.D. 182, 184 (D.Nev. 1989) (suggesting this is the "majority" position); see also Fann v. Giant Food, Inc., 115 F.R.D. 593, 596 (D.D.C. 1987), reconsideration denied 1987 WL 12370 (No. Civ.A. 86-3376) (1987) (investigation begun after plaintiff hired counsel but before suit filed amounts to "a more or less routine investigation of a possibly resistable claim."); Thomas Organ Co. v. Jadranska Slobodna Plovidba, 54 F.R.D. 367, 372 (N.D.Ill. 1972).
At the other extreme, courts note that "the anticipation of the filing of a claim is undeniable once an accident has occurred and a person injured or property damaged. Documents prepared at that time, therefore, are clearly prepared in anticipation of litigation." Fontaine v. Sunflower Beef Carrier, Inc., 87 F.R.D. 89, 92 (E.D.Mo. 1980). The court in Fontaine "conceded that in the context of an insurance investigation of an accident, the analysis hereby adopted will almost always result in a finding that the documents were prepared in anticipation of litigation." Id.
In the middle, courts eschew per se rules at either extreme in favor of a case by case approach. Those courts look to the facts of each case in an effort to find the variable point at which a routine investigation shifts to one in anticipation of litigation. The point "varies depending on the nature of the claim, and the type of investigation conducted." Carver v. Allstate Ins. Co., 94 F.R.D. 131, 134 (S.D.Ga. 1982); see also Auto Owners Ins. Co. v. Totaltape, Inc., 135 F.R.D. 199, 202 (M.D.Fla. 1990) ("trend in lower federal courts is to analyze work product claims concerning insurance claims files on a case by case basis ..."); Airheart v. Chicago and North Western Transp. Co., 128 F.R.D. 669, 671 (D.S.D. 1989); Pete Rinaldi's Fast Foods v. Great American Ins., 123 F.R.D. 198, 201-02 (M.D.N.C. 1988); Sham v. Hyannis Heritage House Hotel, Inc., 118 F.R.D. 24, 26 (D.Mass. 1987); Taroli v. General Electric Co., 114 F.R.D. 97, 98-99 (N.D.Ind. 1987), aff'd. 840 F.2d 920 (7th Cir.1988); Mission Nat. Ins. Co. v. Lilly, 112 F.R.D. 160, 164 (D.Minn. 1986); Basinger v. Glacier Carriers, Inc., 107 F.R.D. 771, 773-74 (M.D.Pa. 1985).
In the end, a case by case approach is the only approach which seems to us to make any real sense, even though paradoxically, insurance company investigations of accidents typically encompass "routine" investigations with an "eye toward litigation." In using this approach, our courts should consider "the nature of the documents, the nature of the litigation [and investigation], the relationship between the parties, and any other fact peculiar to the case." Pete Rinaldi's Fast Foods, 123 F.R.D. at 202; Carver v. Allstate, 94 F.R.D. at 134.
Here, it seems arguable that "the prospect of litigation" was at least identifiable after May 2nd because a specific claim for damages against the insured, likely to lead to litigation, had arisen. The letter from attorney Miller to State Farm declares that he had been retained "to represent Rita Anderson in her claim for injuries and damages" sustained in an accident with State Farm's insured. In light of this letter, it is hard to dispute State Farm's claim that it acted thereafter with an eye toward litigation.
We leave for the trial court, however, the determination of whether any investigation conducted prior to the filing of complaint was in anticipation of litigation, and whether anything in the file of State Farm, regardless of when gathered, is privileged work product. What is prepared with an eye toward litigation, and not in the ordinary course of business, is a matter which the trial court should consider in more detail using a case by case, item by item approach.

A.
Even though privileged work product, the material may yet be discovered upon a showing of substantial need. From the pleadings in this case, it appears there *620 has been no showing of substantial need. Of course, it also is not clear whether the trial court was concerned with this point; it may have ordered discovery on the opinion that none of the material was privileged work product, thus negating any requirement that Anderson show substantial need. Because of the disposition we make of this Petition, we direct the trial court's attention to this provision of Rule 26(b)(3).

B.
Finally, State Farm complains because the order of the trial court says nothing of protecting from disclosure the "mental impressions, conclusions, opinions or legal theories" which may be in the file of State Farm. Even though the order makes no such provision, such a requirement is written in Rule 26(b)(3) and, therefore, State Farm has a legitimate right to object to the disclosure of this type of material based on the plain language of the rule. Again, however, we wish to direct the trial court's attention to this provision when reconsidering the discovery issues presented by this Petition.

V.
All of the above said, the question returns to whether or not the Court wants to intervene via Rule 5. As previously stated, we have what is arguably a question of law within the meaning of Rule 5, and one about which there are substantial grounds to differ with the trial court. It appears as well that Haynes, as the insured and defendant, will suffer irreparable injury due to the Humpty Dumpty syndrome. It might also be said that this is an issue of general importance, all of which suggests this Court should grant the petition.
On the other hand, since we are not advised of the content of the file, and know very little regarding the nature of State Farm's investigation, it occurs to us that the trial court should deal with each matter in the file on an item by item basis. There are potential factual disputes lurking in and around the file of State Farm which we are not inclined to settle at this stage. American Electric v. Singarayar, 530 So.2d 1319, 1322 (Miss. 1988).
Objections to the discovery of the contents of State Farm's investigative file may be lodged with the trial court on an item by item basis. The trial court should carefully consider each objection and decide whether to allow discovery, consistent with what we say in this opinion.
PETITION FOR INTERLOCUTORY APPEAL DENIED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, PITTMAN and McRAE, JJ., concur.
McRAE, J., specially concurs with separate written opinion, joined by DAN M. LEE, P.J.
BANKS, J., not participating.
McRAE, Justice, specially concurring:
While I agree with the result which the majority has reached in denying this Petition for Interlocutory Appeal, I write separately. First of all, this appeal was brought by State Farm's attorney who was employed to represent Grace Haynes, its insured, as a result of an automobile accident which occurred on April 27, 1990. State Farm is not a litigant in this action. We have not allowed direct actions against an insurance company that has contracted with a third party for his coverage. State Farm and other insurance companies enjoy this luxury. See Westmoreland v. Raper, 511 So.2d 884 (Miss. 1987). One must remember this appeal is based on the fact that an insurance adjuster employed by State Farm, reviewed how the accident occurred, and made what is called "an investigative file," which would ultimately become part of the insurer's business records. State Farm now claims the privilege of an attorney, but does so without the benefit of being licensed by the State to be an attorney. It is nothing more than any other corporation which does business in this state. It is out there seeking to make a profit and doing those things which it has contracted and obligated itself to do, namely, to settle claims made by or against its *621 insureds. If and when a lawsuit is filed, it employs the services of an attorney to defend its insured, even though the claim may be a frivolous claim. For State Farm now to take the position that everything it does is in anticipation of litigation, is to say that State Farm and all insurance companies are by nature litigious  that they intend to go to court in every claim filed. That simply is not correct; that is not the way they advertise; that is not the way they hold themselves out to the public; that is not what they tell the Insurance Commissioner. In fact, in excess of ninety percent (90%) of all claims are settled without litigation.
Insurance companies tell their insureds, "We will protect you and pay damages if you are at fault." They do not contract with their insureds with the caveat "We will pay damages up to a certain amount of money after litigation has first established that you are at fault." Investigation is a routine procedure to determine if the insured is at fault and the extent of the damages.
Confidential communications between attorney and client are governed by Miss. Code Ann. § 73-3-37 (1972), "Duties of an Attorney." It provides that the attorney will maintain as confidential any communications between himself and a client or prospective client. See Perkins v. Guy, 55 Miss. 153 (1877). Privileged communication is defined as "`confidential' if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication."
Further, we have narrowed the privilege to extend only to communications regarding the legal services provided by the attorney. Services which are strictly business or personal, do not enjoy the privilege. See McCormick, Evidence, § 92, and Comments to Rule 502, Miss.R.Evid.
This Court has not recognized the privilege in those cases where the attorney is merely a scrivener. Rogers v. State, 266 So.2d 10 (Miss. 1972). To determine whether or not a communication is cloaked with the attorney-client privilege, there must be an intent for it to remain confidential. Where communication is made in the presence of others, it cannot be considered confidential. Intent can be inferred from a particular circumstance. This is generally the test for confidentiality and is the foundation for the related work product doctrine. See Taylor v. State, 285 So.2d 172 (Miss. 1973); Ferrell v. State, 208 Miss. 539, 45 So.2d 127 (1950).
Work product is another creature of common law origin, which was first articulated in the landmark case of Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1957).
Here, we must determine whose work product it is which we are asked to protect. State Farm is not an attorney. It is a corporation which cannot claim anything except business records. These business records are used to settle claims and determine whether, pursuant to its contract with its insureds, any money is owed.
The linchpin of Appellant's Interlocutory Appeal is MRCP 26(b)(3). It appears State Farm is attempting to base its claim on Paragraph 1 thereof, but has failed to read Paragraph 2, which states:
A party may obtain without the required showing a statement concerning the action or its subject matter previously made by the party. Upon request, a person not a party may obtain without the required showing a statement concerning the action or its subject matter previously made by that person. If the request is refused, the person may move for a court order... . For purposes of this paragraph, a statement previously made is: (A) a written statement signed or otherwise adopted or approved by the person making it, or (B) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded.
The above language clearly indicates that there is no privileged communication or work product of an insurance company *622 involving any investigative type files, because the statements can be obtained by a party or a non-party who has given one to an adjuster or to an insurance company. Work product, or confidential information, has to have some basis, otherwise, documentation, communication or the product of records that have been produced are not confidential.
There is no basis for State Farm's assertion that everything it does is in anticipation of litigation and not to settle claims. To the contrary, the insurance industry has promulgated self-regulation since 1976, when the Unfair Claims Practices Acts and Regulations were instituted by the National Insurance Commissioners Conference and approved by the insurance companies. The focus of these regulations or standards has been to establish industry-wide procedures to resolve claims, in avoidance of litigation. In response to complaints about the delay in settling both third-party claims and those of their insureds, the industry accepted standards for guidance in evaluating and reserving claims, as well as the directive to pay them within thirty (30) days after presentment. When a claim cannot be resolved within thirty days, after notice to the insurance company, the insurer must advise the claimant in writing on the status of his claim every forty-five (45) days thereafter until it is settled. Clearly, insurance companies are not in the litigation business. Their business is to evaluate claims, to determine whether their insured is at fault, and establish the amount owed the insured or on first-party claims to determine if the claim is covered and then pay or deny. To do so requires the creation of voluminous investigative files, the backbone of the industry's business records.
The majority has said that this has become a question of law. Under what law does State Farm claim the privilege? There is no authority to support this position. Further, I submit that there is no authority giving any type of privilege to any insurance company for their records. Even if State Farm is the representative of Haynes, there is no authority for any confidentiality. Confidentiality and work product can be waived. In fact, in the cases we have decided, particularly involving a third party who is present whenever the communication is made, or the giving of a document to a third person, we have said waives the privilege. See Taylor, supra; Ferrell, supra.
Adjusters handle claims from outside the state. They adjust claims from Louisiana, Florida, Alabama, Georgia, Texas, New York, or any other state via telephone or mail. Our Court regulates attorneys in this state. We do not regulate insurance adjusters, nor is there any statutory provision for this Court to regulate them in a professional manner as an attorney. Adjusters or insurance companies, therefore, cannot come under the guise of an attorney/client privilege where there is no authority. Miss. Code Ann. § 73-3-37 requires the attorney "To maintain inviolate the confidence and, at every peril to themselves, to preserve the secrets of their clients; ... ." There is no requirement for that to occur for a business or its employees. By the same token, it is the attorney/client privilege which is the linchpin or the foundation for work product of the attorney.
One can make an analogy with the medical profession. Miss. Code Ann. § 13-1-21 (1972 & Supp. 1991) created a physician/patient privilege. However, through our rule-making process under Miss.R.Evid. 503 we have allowed privilege to be waived only to the extent of any medical issues placed at issue in a lawsuit. No statutory authority exists for the insurance company to keep documentation privileged or have standing to claim the privilege of an attorney or work product of an attorney.
What is there to say if an individual says, "I want a contract with you and if you have a wreck, I will pay for and on behalf of you, X number of dollars, and I'll hire the attorney." Does that individual enjoy the same privilege that we have given the insurance companies? Can there ever be a waiver of that privilege? Can those documentations be sent to other insurance companies? Does that waive? Nearly all insurance companies operate and belong to *623 the Index Bureau, which is simply a facility that maintains information on all claims filed with insurance companies, regardless of whether it is a health, casualty, or fire claim. The Bureau contains the information on the claim and advises on an insurance company inquiry what other types of claims one has had and who the adjuster and company is that has additional information about the claim. The companies do not generally maintain privileged communication among themselves. An attorney or client waives work product by giving the documentation to a third person. Can an insurance company also waive it?
Clearly, the majority opinion seems to give the impression that Haynes has a viable argument, gives credence to her contention that the trial court erred in failing to protect against the disclosure of the adjuster's mental impressions or opinions regarding the accident pursuant to Rule 26(b)(3).
Rule 26(b)(3), MRCP, actually deals with pre-trial preparation and discovery materials. It states that "the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." In the insurance claims context, this encompasses the mental impressions of the attorney of his communications with the adjuster either in anticipation of litigation or during discovery and his theories of the case, not those of the insurer or the adjuster. The majority deals with insurance representatives being included within the rule.
The statements or summaries of any statements made by witnesses or parties in an adjuster's files are waived by the rule and do not become the linchpin of any attorney/client privilege or work product. See Rule 26(b)(3)(¶ 2), MRCP. Further, because there is no substantive statute which sets out such privilege, these are simply business records.
I agree with the majority that the Petition for Interlocutory Appeal should be denied. However, I feel that the lower court was correct in its original interpretation and that the lower court should be guided accordingly pursuant to the remarks made.
DAN M. LEE, P.J., joins this opinion.