COBB, Justice,
for the Court.
¶ 1. This is the second time this interlocutory appeal has been before this Court with the same issue for review. Attorney George P. Hewes, III and the Brown & Williamson Tobacco Corporation (B & W) seek review of orders by the Hinds County Circuit Court compelling them to provide attorney Cynthia Langston with a number of documents which they claim to be privileged.
¶2. For purposes of an in camera inspection by the trial court, the documents were divided into 68 numbered “Items,”[1] with some of the Items containing multiple documents. After the in camera inspection, the trial judge concluded that 38 of the Items were not discoverable, but ordered the remaining 30 Items to be turned over to Langston, finding “that the documents reviewed are relevant to the issues raised in Plaintiffs complaint and are therefore discoverable.” From that order, Hewes and B & W sought and were granted permission to bring this interlocutory appeal. See M.R.A.P. 5.
¶ 3. Hewes and B & W subsequently withdrew their objection to Item 38, a *802 letter and draft affidavit from Alan Perry (Hewes’s original counsel in this action), to Richard Roberts, counsel for Mike Miller, Langston’s ex-husband. Further, Item 28 is a chronology of events with numerous attachments. The trial judge concluded that the chronology of events, itself, was not discoverable but that the attachments to the chronology were discoverable. Hewes and B & W withdrew their objection to most of the attachments to Item 23, but maintained their objection to one of the letters that was part of the attachments, Item 23/Page 183. Thus on appeal, of the original 30 Items, there remain 29 at issue.
¶ 4. When this interlocutory appeal was first before us, we determined that the trial court’s findings of fact and conclusions of law were insufficient for a meaningful review, and we remanded the case to the trial court to enter “findings of fact and conclusions of law regarding each of the twenty-nine items as to which discovery is now contested.” After further findings by the trial court, this interlocutory appeal is now before us for a second time with the same issue for review:
DID THE CIRCUIT COURT ERR IN ORDERING HEWES TO PRODUCE TWENTY-NINE ITEMS OF PRIVILEGED MATERIALS?
¶ 5. To more effectively discuss this issue, we have divided this issue into the following subsections:
A. Application of the Attorney-Client Privilege, the Work Product Doctrine, and the Crime-Fraud Exception
B. The Trial Court’s in Camera Review of the Materials at Issue
C. Findings of Fact and Conclusions of Law Regarding Each of the Twenty-nine Items as to which Discovery is now Contested.
¶ 6. Concluding that the trial court erred in determining that all of the 29 Items were discoverable, we reverse and remand.

FACTS

¶ 7. In 1996, Cynthia Langston served as counsel for the plaintiffs in Butler v. Phillip Morris, Inc., a wrongful death action filed in the Jones County Circuit Court against tobacco manufacturers. While that litigation was ongoing, Langston was in the process of divorcing her then husband, Mike Miller, who was a manager for BellSouth Telecommunications. Langston accused Miller of using his position at Bell-South to improperly access her telephone records. Langston further alleged that sometime before the divorce was finalized, Miller contacted George P. Hewes, III, an attorney with the law firm of Brunini, Grantham, Grower & Hewes, PLLC (the Brunini firm), which represented the tobacco companies, claiming to have proof of improper ex parte contact between Lang-ston and Circuit Judge Billy Joe Landrum, the presiding judge in the tobacco case. Approximately one year later, the defendants in the tobacco case successfully pursued Judge Landrum’s disqualification from that case.
¶ 8. Subsequently, Langston came into possession of a letter, written on the letterhead of the Phelps Dunbar, LLP law firm, that accused Hewes and two attorneys with Phelps Dunbar of communicating with Miller about Langston’s private telephone conversations regarding the tobacco litigation. The letter was signed “haunted friend”; however, the attorney whose printed name appeared on the official stationery, by affidavit, denied any knowledge of or involvement in the production of the letter.
¶ 9. In June 1998, Langston filed the present suit in the Hinds County Circuit Court against BellSouth, B & W (and its *803 parent corporations) and the Brunini firm, as well as Hewes and Miller individually, alleging negligence, conspiracy to invade privacy and negligent infliction of emotional distress. During discovery, Langston sought to compel Hewes to produce numerous documents which Hewes claimed were privileged. After reviewing the documents in camera, the trial judge concluded that thirty-eight of the Items were not discoverable, but thirty were, and ordered that they be produced. Hewes filed an interlocutory appeal, and the trial court stayed the order pending our review.
¶ 10. Because the trial judge’s initial order requiring Hewes and B & W to produce the documents was general in nature and did not make findings of fact and conclusions of law as to why each of the Items were discoverable, this Court was unable to conduct a proper review. For that reason, we remanded this case to the trial court to complete that task.
¶ 11. On remand, the trial judge entered a six-page order which responded to our request. It contained a lengthy explanation of the facts and history of the case, and, generally, of the applicable law. However, we were not provided any specific explanation of the trial judge’s basis for concluding why certain documents were discoverable and others were not. Having now reviewed the documents and trial judge’s response, we reverse and remand.

STANDARD OF REVIEW

¶ 12. The application of privilege is properly a mixed question of law and fact, with the circuit court’s factual findings reviewed for clear error and its interpretation of the law reviewed de novo. United States v. Neal, 27 F.3d 1035, 1048 (5th Cir.1994).

DISCUSSION

¶ 13. While in the past we have entertained interlocutory appeals concerning questions of privilege where there were “arguably a question of law or law application, within the meaning of [M.R.A.P. 5],” we have categorically rejected the “wholesale granting of interlocutory appeals of civil discovery disputes.” Haynes v. Anderson, 597 So.2d 615, 617 (Miss.1992) (quoting In re Knapp, 536 So.2d 1330, 1333 (Miss.1988) (“Pre-trial discovery is governed by flexible rules well within the administrative capacity of our trial courts”)). In Haynes we noted that application of privilege should be considered by the trial court “using a case by case, item by item approach.” Haynes, 597 So.2d at 619. Accordingly, in Haynes we ultimately remanded the case due to the trial court’s failure to explain whether the materials at issue were privileged work product subject to an exception or whether they were not actually considered work product at all. Id. at 620.
¶ 14. Hewes and B & W argue that all 29 Items at issue are protected by the attorney-client privilege or the work product doctrine. Langston responds that the documents are not so protected, and even if they were, they would fit within the crime-fraud exception to the privilege.
A. Application of the Attorney-Client Privilege, the Work Product Doctrine, and the Crime-Fraud Exception

Attorney-Client Privilege

¶ 15. “The attorney-client privilege is the oldest of the privileges for confidential communications known to the common" law.” Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). “Its purpose is to encourage full and frank communication between attorneys and their clients and thereby to promote broader public interests in the observance of law and administration of *804 justice.” Id. at 389, 101 S.Ct. 677. “That purpose, of course, requires that clients be free to make full disclosure to their attorneys.” United States v. Zolin, 491 U.S. 554, 562, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989).
¶ 16. In its version of the attorney-client privilege, Mississippi follows the uniform rule adopted by a majority of the states. Rule 502(b) of the Mississippi Rules of Evidence explains the privilege[2] as follows:
(b) General Rule of Privilege. A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between himself or his representative and his lawyer or his lawyer’s representative, (2) between his lawyer and the lawyer’s representative, (3) by him or his representative or his lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein, (4) between representatives of a client or between the client and a representative of the client, or (5) among lawyers and their representatives representing the same client.
Miss. R. Evid. 502(b) (emphasis added). This Court has interpreted the scope of the attorney-client privilege under Mississippi law broadly, stating:
the privilege relates to and covers all information regarding the client received by the attorney in his professional capacity and in the course of his representation of the client. Included are communications made by the client to the attorney and by the attorney to the client. In that sense it is a two-way street.
Barnes v. State, 460 So.2d 126, 131 (Miss.1984) (emphasis added). Further: “[t]he privilege does not require the communication to contain purely legal analysis or advice to be privileged.” Dunn v. State Farm Fire & Cas. Co., 927 F.2d 869, 875 (5th Cir.1991) (applying Mississippi law). “Instead, if a communication between a lawyer and client would facilitate the rendition of legal services or advice, the communication is privileged.” Id. at 875.
¶ 17. A significant part of the attorney-client privilege for purposes of this appeal is the “common interest” privilege, as set forth in Miss. R. Evid. 502(b)(3). According to the comment to the rule: “The privilege extends to statements made in multiple party cases in which different lawyers represent clients who have common interests.” Miss. R. Evid. 502 cmt.

The Work Product Doctrine

¶ 18. The work product doctrine protects an attorney1 s thoughts, mental impressions, strategies, and analysis from discovery by opposing counsel. Hickman v. Taylor, 329 U.S. 495, 510-11, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947). As the Supreme Court said:
Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client’s case de *805 mands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients’ interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways — aptly though roughly termed ... as the “Work product of the lawyer.”
Hickman, 329 U.S. at 510-11, 67 S.Ct. at 393. “Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and mental impressions of an attorney.” Id. at 510, 67 S.Ct. 385. Further, “[t]he work product privilege is very different from the attorney-client privilege.” Shields v. Sturm, Ruger & Co., 864 F.2d 379, 382 (5th Cir.1989). It “does not exist to protect a confidential relationship but to promote the adversary system by safeguarding the fruits of an attorney’s trial preparations from the discovery attempts of an opponent.” Id. at 382. Without this privilege, “[ijnefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial.” Hickman, 329 U.S. at 511, 67 S.Ct. 385.
¶ 19. Rule 26(b)(3) of the Mississippi Rules of Civil Procedure explains the work product doctrine as follows:
(3) Trial Preparation: Materials. Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party’s representative (including his attorney, consultant, surety, in-demnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.
Miss. R. Civ. P. 26(b)(3) (emphasis added).
¶ 20. Langston argues that a party seeking discovery of work product materials can do so by showing a “substantial need” for the materials and the inability to obtain substantially equivalent materials without “undue hardship.” However, as Hewes points out, this is a misstatement of the law. Even if the party seeking discovery makes a showing of substantial need and undue hardship, pursuant to the rule, “the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney.” Miss. R. Civ. P. 26(b)(3) (emphasis added).

Crime-Fraud Exception

¶ 21. Rule 502(d) of the Mississippi Rules of Evidence creates several exceptions to the attorney-client privilege. One such exception, relevant to the case sub judice, is what has been termed the “crime-fraud” exception, which the rules of evidence explain as follows:
(d) Exceptions. There is no privilege under this rule:
(1) Furtherance of Crime or Fraud. If the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the *806 client knew or reasonably should have known to be a crime or fraud....
Miss. R. Evid. 502(d)(1).
¶22. Although this Court apparently has not spoken as to whether the crime-fraud exception applies to the work product doctrine, the Fifth Circuit has held that it does, as have the Second and Third Circuits. See In re Int’l Sys. & Controls Corp. Sec. Litig., 693 F.2d 1235, 1242 (5th Cir.1982); In re John Doe Corp., 675 F.2d 482, 492 (2d Cir.1982); In re Grand Jury Proceedings, 604 F.2d 798, 803 (3d Cir.1979). The Fifth Circuit has adopted a two-part test for determining whether the crime-fraud exception applies to materials protected by the work product doctrine: (1) there must be a prima facie showing of a violation sufficiently serious to defeat the work product privilege, and (2) the court must find some valid relationship between the work product under subpoena and the prima facie violation. In re Int’l Sys., 693 F.2d at 1242.
B. The Trial Court’s in Camera Review of the Materials at Issue
¶ 23. Hewes and B & W argue that there was no evidence of a crime or fraud, and the trial judge made no finding of a crime or fraud; therefore, it was improper for the judge to have reviewed the documents, even in camera, absent such a finding. Langston disagrees, claiming there is proof of a conspiracy, and the crime-fraud exception eliminates any privilege otherwise afforded by the documents at issue.
¶ 24. Before a trial judge may engage in an in camera review, the party seeking disclosure must show “a factual basis adequate to support a good faith belief by a reasonable person,” that in camera review will show the applicability of the exception. Zolin, 491 U.S. at 572, 109 S.Ct. 2619. The evidentiary burden that the party seeking disclosure must meet before in camera review is appropriate is therefore significantly less than is needed to actually overcome the privilege itself. Id. Once a party seeking disclosure of allegedly privileged materials sets forth a prima facie case that the crime-fraud exception applies, the decision of whether to engage in an in camera review is committed to the sound discretion of the trial court. Id.
¶ 25. Langston’s Motion to Compel states that Hewes had meetings with Miller; that Langston’s phone records were accessed improperly; that Miller worked for BellSouth at the time the phone records were accessed; that all of these events took place at suspicious times during the course of the Butler litigation; and that they evidenced a conspiracy to gain access to her private records and those of the trial judge in Butler.
¶ 26. Based on these allegations and arguments, and the fact that Hewes apparently had a role in the removal of the trial judge in the tobacco litigation, we conclude that a reasonable person could believe in good faith that an in camera review of the documents in question could show whether the crime-fraud exception was applicable. Zolin, 491 U.S. at 572, 109 S.Ct. 2619. Therefore, the circuit court did not abuse its discretion in reviewing the documents in camera.
C. Findings of Fact and Conclusions of Law Regarding Each of the Twenty-nine Items as to which Discovery is now Contested
¶ 27. The circuit court initially inspected the documents in camera and concluded that some of the documents should be produced, but it did not provide any rationale for its decision as to why some documents were privileged and others were not. On remand, the trial court once again *807 has failed to provide this Court with sufficient information for effective review. For that reason, we are precluded from reviewing the decision of the trial court for clear error and will instead conduct a de novo review of the documents at issue to determine whether they are protected or not.
¶ 28. Langston argues that the assertions of privilege were defeated primarily because the documents fit within the crime-fraud exception. (The prima facie case for establishing the crime-fraud exception carries a higher burden than the prima facie case for getting an in camera review of disputed documents.) The former requires proof that the crime or fraud actually occurred. The latter just requires sufficient proof of a crime or fraud such that a review of the documents would reveal whether they were protected. Zolin, 491 U.S. at 572, 109 S.Ct. 2619. Having carefully reviewed all of the documents at issue, individually, we conclude that none of the documents supports Langston’s claim that Hewes conspired with Miller to access Langston’s telephone records. We further conclude that Langston has failed to meet her burden of proving that a crime or fraud has actually occurred. Thus, the crime-fraud exception is not applicable.
¶ 29. We turn next to the determination of whether the documents at issue are protected by the attorney-client privilege or the work product doctrine.

Item 2: A file memo by Hewes concerning his May 1996 encounter with Miller in downtown Jackson.

¶ 30. Item 2 is a file memorandum prepared by Hewes, dated May 6, 1996, that describes a chance encounter when Hewes “bumped into” Miller in downtown Jackson, and Miller voluntarily indicated he wanted to “get back in touch” with Hewes. Hewes argues that an attorney’s memorandum to the office file and other attorneys, noting conversations with third parties, is protected by the work product doctrine. We agree, particularly with regard to the content of this Item. In fact, such memos receive even greater protection because they necessarily reveal the attorney’s mental impressions. Upjohn, 449 U.S. at 400-02, 101 S.Ct. 677. They may be obtained through discovery only in rare situations, and upon a far stronger showing than for other work product documents. Id. Langston has failed to meet that burden here. Thus, Item 2 is not discoverable, and the trial court erred in determining otherwise.

Item 25: A legal research memo to Hewes

¶ 31. Item 25 is a legal research memo, dated February 20, 1998, prepared by a Brunini law firm associate for Hewes. Hewes correctly argues that research undertaken by an attorney to respond to a client’s request falls within the purview of the attorney-client privilege. See Nguyen v. Excel Corp., 197 F.3d 200, 206 (5th Cir.1999). As such, the trial court erred in determining that Item 25 was discoverable.

Items 47-68 (excepting Items 51 and 54): Itemized billing records and corresponding DayTimer entries

¶ 32. Langston sought production of all itemized bills reflecting services Hewes rendered to B & W in the course of the Butler case, over nearly a three-year period, along with his DayTimer entries from which the bills were created. The trial court ordered all but two of the itemized bills produced. Hewes points out that the court gave no explanation or reason in making that determination. In fact, Hewes contends that the two excepted Items, 51 and 54, are identical in type to *808 Items which the court ordered produced.[3] Further, Hewes claims he has already redacted and produced all references in the billing records to communications with Miller and has testified at length regarding those meetings.
¶ 33. Although this Court has not dealt with this specific issue, courts in other jurisdictions have. In Clarke v. American Commerce Nat’l Bank, 974 F.2d 127 (9th Cir.1992), the Ninth Circuit discussed the criteria it uses in determining whether billing records are discoverable:
the identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege. However, correspondence, bills, ledgers, statements, and time records which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law, fall within the privilege.
Id. at 129 (citations omitted & emphasis added). See also Chaudhry v. Gallerizzo, 174 F.3d 394, 403 (4th Cir.1999) (holding that billing records which identified specific statutes being researched were privileged). While a simple invoice ordinarily is not privileged, itemized legal bills necessarily reveal confidential information and thus fall within the privilege. As one court explained:
billing records describing the services performed for his clients and the time spent on those services, and any other attorney-client correspondence relating to the performance of legal services and the rates therefor ... may reveal the client’s motivation for seeking legal representation, the nature of the services provided or contemplated, strategies to be employed in the event of litigation, and other confidential information exchanged during the course of the representation.
In re Horn, 976 F.2d 1314, 1317-18 (9th Cir.1992).
¶ 34. Hewes argues that the billing statements, along with their DayTimer entries at issue, describe the identities of parties to conversations and correspondence, and the dates and subject matter of legal research performed by Hewes for his client over a period of nearly three years. After reviewing of the billing statements and DayTimer entries, we agree. The documents at issue do not merely indicate the client’s name, the amount of payment, and the general nature of the work performed. Instead, the documents detail an hour-by-hour rendition of the work performed for a client over a three-year period. These documents detail, by name, the people with whom Hewes talked, and the topics they discussed. These documents describe the subjects that Hewes researched and the papers he reviewed. These descriptions necessarily reveal strategies, confidential communications, and the thought processes behind the representation. Allowing discovery of these documents would, in effect, allow Langston to be the proverbial “fly on the wall” of the Brunini firm.
¶ 35. It should be further noted that the Mississippi Bar apparently views detailed billing statements as privileged and confidential. Ethics Opinion No. 246, rendered April 8, 1999, prohibits an attorney from producing billing statements to third parties auditors without the informed con *809 sent of the client. The Mississippi Bar concluded:
In summary, it is the opinion of the Committee that an attorney may ethically ... provide a detañed bñling statement to a third party legal auditing service for review only with the informed consent of the insured and that consent may not be requested by the lawyer if a disinterested lawyer would conclude that the client should not agree to such disclosure.
Miss. Bar, Ethics Opinion No. 246 — Independence of Counsel: Third Party Auditor.
¶ 36. We conclude that the billing statements and DayTimer entries are the type of detañed statements that are protected by the work product doctrine, and the trial court erred in ordering them produced.

Items 23 (attachment, page 183 only): 26, 30, 31, 35, 36, and 37: Various correspondence and attachments, including draft affidavits, circulated among Butler defense counsel and Alan Perry

¶ 37. Hewes points out that all of these documents are letters, draft affidavits, and other correspondence circulated among defense counsel in Butler, or this action, on matters of common interest. Thus, these documents are protected under the “common interest” prong of the attorney-client privilege as well as under the work product doctrine. Hewes further argues that only attorneys involved either in the Butler case, or this case, have had access to any of these communications. With the exception of the attachment to Item 23/Page 183, all of these documents were generated after Langston asserted her claims of wrongdoing and were in response to actual or anticipated litigation. We agree that they are protected by the work product rule and the “common interest” prong of the attorney-client privüege, and it was error for the trial court to order these documents produced.

CONCLUSION

¶ 38. It is not the intention of this Court to make a habit of conducting de novo review of items challenged during discovery. As a general rule, we have declared that we are “not about to become involved in the wholesale granting of interlocutory appeals of civil discovery disputes.” Haynes, 597 So.2d at 617 (citing In re Knapp, 536 So.2d at 1333). However, we went further in Knapp and carved out a limited exception, saying that “[i]f the matter thought privileged is ordered disclosed and is in fact disclosed, our later reversal would be founded on the Humpty Dumpty syndrome.” 536 So.2d at 1333. The present ease is another in which Humpty Dumpty could not be put back together again, had we not granted interlocutory relief.
¶ 39. The trial court had two opportunities to conduct an item by item review and ruling, but did not. Thus, we undertook that responsibility in this case, not only to avoid another time-consuming remand to the trial court, but also to clarify this Court’s position with regard to review of such discovery chaüenges. In Haynes, we said that “the trial court should deal with each matter in the file on an item by item basis.” Haynes, 597 So.2d at 620. However, the contents of the file were not before the Court in Haynes, and thus the interlocutory appeal was denied. In the present case, we do have the challenged documents before us. After reviewing the documents item by item, we conclude that all of the documents at issue fall within either the attorney-client privüege or the work product doctrine and thus it was error for the trial court to order them produced.
*810 ¶ 40. We reiterate that when objections to discovery of specific documents are made, the trial court should deal with each on an item-by-item basis, carefully considering each objection, deciding whether to allow discovery, and stating the rule or exception which provides the basis for the decision.
¶ 41. For these reasons, the circuit court’s orders compelling production of the 29 Items are reversed, Langston’s motion to compel production of the 29 Items is denied, and this case is remanded to the circuit court for further proceedings consistent with this opinion.
¶ 42. REVERSED AND REMANDED.
PITTMAN, C.J., SMITH, P.J., AND CARLSON, J., CONCUR. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY EASLEY, J. GRAVES, J. JOINS IN PART. WALLER AND DIAZ, JJ., NOT PARTICIPATING.

. Each group of documents has an Item number, sequentially numbered from 1 to 68. Also, each page of each document has a Bates number, beginning with GPH 000001, and ending with GPH 000514. Of the 68 Items, only 29 are before this Court on appeal. For the sake of clarity, we refer to each document at issue simply by its Item number. However, where an Item contains multiple documents, which need to be distinguished from each other, we refer to it by its Item and Bates number(s), for example: Item 23/Pages 184-85.

. Even though Rule 502 is actually entitled "Lawyer-Client Privilege”, in the present case the parties and the trial judge refer to the privilege by its more common name, attorney-client privilege. Thus we will do so as well.

. Because those two billing records are not before this Court, we can neither confirm nor deny that allegation. Also, the trial judge has given us no hint as to why two of the monthly billing statements were protected, but the rest were not.